No. 40,286

CHARLES E. PATTIMORE, *Appellee,* v. LOUISE DAVIS, *Appellant.*

(305 P. 2d 835)

Opinion filed January 12, 1957.

*James B. Pearson,* of Olathe, argued the cause and *John R. Keach,* of Mission, was with him on the briefs for the appellant.

*A. J. Herrod,* of Kansas City, argued the cause and *John W. Breyfogle, Jr.,* of Olathe, was with him on the briefs for the appellee.

The following opinion was prepared by SMITH, C. J., and approved by the court prior to his retirement from the court, and is now ordered filed as the opinion of the court.

This was an action to restrain the defendant from selling personal property or disposing of real property and for the return of a bill of sale and deed to a named bank and an order for the bill of sale to be held until the death of defendant. Judgment was for the plaintiff. The defendant has appealed.

The petition is drawn on the theory of an action to enforce the performance of an oral contract to convey real estate and to transfer the ownership of real property. The defendant was about to breach the contract so as to make it impossible for the property to be transferred to the plaintiff at her death—hence the prayer was for an injunction. Before the case came on to be tried it was agreed by the parties that the sales contemplated by the defendant should be consummated and the proceeds paid to the clerk of the court to await final judgment in the action.

The amended petition alleged that John Davis purchased eighty acres of land in Linn county; that he was the grandfather of the plaintiff; that plaintiff performed many services upon the farm at the request of John and Louise, his wife, the defendant here; that in consideration of such work John and Louise orally agreed

with plaintiff to execute a deed to the farm and a bill of sale of all personal property located upon the farm and deposit them in the Linn county bank to remain there until the deaths of John and Louise and then to be delivered; that in March, 1952, they did so execute a deed conveying the real property and a bill of sale to the personal property to plaintiff and placed them in escrow with the Linn county bank, with the oral understanding they should be delivered to the plaintiff after the death of John and Louise; that plaintiff continued to render the services until he learned in September, 1954, that defendants had removed the bill of sale and deed from the Linn county bank and were advertising the personal and real property for sale, in violation of the terms and conditions of the oral agreement; that the plaintiff had done all things required of him to be done after the execution of the instruments above set out and he continued to perform all the services he had theretofore performed; that about May, 1954, the defendants obtained possession of the bill of sale and deed and had them in their possession and informed the plaintiff that they would no longer perform the agreements on their part to be performed.

The petition then stated that Jess DePetree and Marian DePetree had induced and coerced Louise to violate the terms of the contract and to refuse to perform the same and defendants had advertised and were about to sell all the property, both real and personal (the same was done as to the proceeds of the sale of the real property); that John died on January 30, 1954, and Louise was then residing with the other defendants at their residence in Johnson county, Kansas. It should be observed that originally Jess DePetree and Marian DePetree were parties defendants with Louise. A restraining order was issued on the filing of the petition. The defendants offered to deposit with the court the proceeds of the sale of personal property. The property was sold and the proceeds deposited with the clerk of the court.

The answer of Louise denied that John purchased the tract of land referred to in the petition but alleged it was purchased by her own separate funds, although the title was vested in John and Louise; denied the plaintiff rendered any services at the special request of Louise or John; said he frequently visited the farm and assisted from time to time on such visits in the work on the farm but it was in the nature of recreation and he never demanded or received any compensation for such services; that from time to

time he received farm products, butchered hogs and cattle and other things; denied that he remodeled the farm house or put a new roof on the house and finished rooms on the attic and second floor and denied he purchased tires and a battery for the truck and alleged the tires and battery were paid for by defendants. Defendants then denied they agreed orally with plaintiff they would execute a deed to the farm and a bill of sale to the personal property in compensation for services rendered but acknowledged that at the time the deed and bill of sale were executed John was sick and not expected to live, and plaintiff represented to Louise and her husband he would provide a home for her and care for her as long as she lived if Louise and John would transfer to him all their property after their death; that preliminary steps were carried out and Louise admitted the deed and bill of sale were executed. The answer further stated that the agreement was never consummated; that plaintiff did not commit himself to provide for Louise and her husband during their life; that the deed and bill of sale were retained in their possession; that John died and Louise had not entered into an agreement with plaintiff for support, and that in accordance with their preliminary negotiations Louise be taken into the home of defendants, Jess DePetree and Marian DePetree, where she was then living.

The plaintiff replied, admitting the frequent visits to the farm home, but denied that any work was in the nature of recreation and reasserted the contract entered into between John and Louise. Plaintiff filed a supplemental petition in which he referred to the stipulation that the real and personal property might be sold and converted into cash; stated these sales were made without prejudice to the rights of either plaintiff or defendant and such moneys were then on deposit with the clerk of the court and alleged that the plaintiff was entitled to have the proceeds of the sales held in trust by any trustee appointed by the court and the income from the investments of such funds as the court might authorize to be paid to Louise during her lifetime and upon her death the corpus of the trust to be distributed to the plaintiff or in lieu of such trust the court determine the reasonable value of the services performed by plaintiff and that he be compensated therefor from such funds on hand impounded with the court.

The prayer of this amended petition was that either a trust be imposed upon the proceeds of the sale of said real estate and per-

sonal property now impounded with the court, the plaintiff to receive the corpus thereof upon the death of Louise, or that the court determine the reasonable value of plaintiff's services and that he be paid therefor from the proceeds of the sales on hand now deposited with the clerk of the court.

The answer of Louise to this amended petition was a reference to the allegations of her answer and a general denial. She prayed that the funds held by the clerk be delivered to her and that plaintiff be declared to have no right, title, claim or interest in or to any portion of the property.

The trial court found that in 1951 defendant Louise and her husband John verbally agreed with plaintiff that if he would continue to do the work on the farm as he had in the past they would see to it that the farm was transferred to him upon their death and he should also have the personal property which they owned at the time of the death of the survivor; that in an effort to carry out the terms of the oral agreement the defendant and her husband about May 16, 1951, executed a deed to the farm and a bill of sale to the property, as might be found upon the death of both; that the instruments were then deposited by defendant and her husband in the Linn county bank with instructions that they be delivered to the defendant on the death of the survivor of the defendant and her husband. The court found that the bill of sale did not describe any particular personal property but generally described such property as might be owned by the defendant upon her death; that the bill of sale contemplated the defendant and her husband retained the right to sell or dispose of their perishable property during their lives and reinvest the same in other property if they so desired. The court further found that defendant's attempted sale of the real estate would place it beyond the reach of the plaintiff and, therefore, give rise to plaintiff's action for specific performance; that plaintiff performed this part of the oral contract from 1951 until the illness of defendant's husband and thereafter the plaintiff continued to farm the ground under a separate agreement as to the division of profits.

The final judgment was that the plaintiff was entitled to the net proceeds of the sale of the real property in the amount of $6,078.80, subject to the defendant's life interest in the profits from such sum and that the defendant was entitled to the proceeds from the sale of the personal property in the amount of $1,231.55 and to the 1949

Dodge truck; and that defendant should be granted judgment in the sum of $20.69, being the difference between one-half of the net proceeds, from the 1954 soybean crop and the expenditures made by plaintiff on the truck. The costs were taxed against plaintiff and the defendant in reverse proportion to the recoveries granted. Jurisdiction of the case was retained for further orders in the event the parties could not agree upon the investment of the proceeds from the sale of the real estate.

The defendant filed a motion for a new trial on the grounds of abuse of discretion; defendant was not afforded a reasonable opportunity to present her evidence and be heard on the evidence of the case; erroneous rulings of the court; and the decision was in whole and in part contrary to the evidence. This motion was overruled—hence this appeal.

The specifications of error were that the court erred in its judgment and decree that plaintiff should have specific performance of an oral contract to convey real and personal property and imposing a trust upon the proceeds of the sale of the real property whereby plaintiff is entitled to the net proceeds of the sale of the real property subject to defendant's life interest in the profits from such sum because the evidence and proof failed to establish the formation of a valid and specifically enforceable contract between the parties; the consequences of specific performance under the circumstances of this case would be inequitable and unjust; and the alleged contract had been rescinded by the creation of a new agreement concerning the same matter with terms of the latter inconsistent with those of the former.

Defendant first argues the evidence fails to establish the formation of a valid and enforceable contract. In this connection defendant relies on authorities where we have held the evidence in such a case must be clear and convincing. Such is undoubtedly the rule. It must be clear and convincing to the trial court. (See *In re Estate of Boller*, 173 Kan. 30, 244 P. 2d 678.) There we said, after reviewing the facts:

"There was evidence supporting the finding, which the trial court found was clear and satisfactory."

But little would be added to this opinion by detailing the evidence. Suffice it to say there was substantial evidence which if believed by the trial court, which it had a right to do, to justify the finding that both Louise and John agreed verbally with the plaintiff that if he would continue to do the work on the farm as

he had in the past they would see to it that the farm was transferred to him upon their death. The exchange of deeds and their deposit in the Linn County bank was a persuasive piece of evidence on this point. Defendant conceded the force of this evidence. She attempted to escape its effect, however, by testifying that plaintiff agreed to furnish her a house as long as she should live in return for the land. The trial court simply saw fit to find the contract enforceable, as already set out in this opinion. We cannot weigh evidence here. (See *Schuler v. Rehberg,* 145 Kan. 176, 64 P. 2d 571; *Jones v. Davis,* 165 Kan. 626, 197 P. 2d 932; and *In re Estate of Spark,* 168 Kan. 270, 212 P. 2d 369.) There was evidence that Charles from 1934 to 1954 went to the farm from two to three days a week. He laid off from his job many times to go to the farm and perform work at the request of John and Louise. He did such work as cutting and shocking oats and other crops, plowing, discing, harrowing, and selling cattle and looking after many business affairs. All these circumstances the trial court no doubt took into consideration.

Defendant next argues the judgment should be reversed because the consequences of specific performance under the circumstances would be inequitable and unjust.

In this connection she points out that she only has a life estate in the proceeds from the sale of the farm and total assets otherwise, of only $5,100. The record discloses she has substantially more than this, that is, $700 in United States bonds and $1,231.55 from the sale of the real property.

What has been said with reference to the first argument of Louise applies with equal force to this one.

Defendant next argues the original oral contract was rescinded by the new agreement concerning the same subject matter, which provided for performance by the parties inconsistent with the former contract. This argument refers to the fact that after Louise left the farm in 1953 she and Charles agreed he was to have one-half the net proceeds from the farm in return for his work. This was obviously brought about by the fact that Louise was not living on the farm and Charles would be compelled to do all the management work that had been done by John. Louise simply rented the farm to Charles. Had she not seen fit to repudiate the contract no one would have known but that it would have been a good contract for her.

The judgment of the trial court is affirmed.