Robert C. JACKSON and Margaret Jackson, husband and wife, Appellants,

v.

William N. WHITE and Beverly J. White, husband and wife, Appellees.

No. 2463.

Supreme Court of Alaska.

Nov. 15, 1976.

---

David Shimek, of Matthews, Dunn & Baily, Anchorage, for appellants.

Harland Davis, Anchorage, for appellees.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

BOOCHEVER, Chief Justice.

Robert and Margaret Jackson appeal from a superior court decree of specific performance for the sale of their homestead property near Soldotna, Alaska, to William and Beverly White.

In the late fall of 1972, the Whites and the Jacksons entered into an oral agreement relating to the Whites' occupancy of the Jacksons' homestead. The Whites contend that the agreement was for the sale of the property for $25,000.00. According to the Whites, Mr. Jackson orally agreed to the basic terms of the sale set out in a writing prepared by the Whites on October 29, 1972.[1] Jackson contends that he did

---

1. The October 29 writing is here set out in full:

LEASE PURCHASE AGREEMENT
NW ¼ of sec. 25 T5N     Kenai, Alaska
R9W SM
Jackson Homestead

10-29-72

We, The Undersigned, Robert C. and Margaret Jackson (Lessor) and William N. and Beverly J. White (Lessee), do agree and hold binding the following articals [sic].

1—Am't and term; $150.00 per mo. for 2 years.

2—Improvement Credit; Lessee will be allowed credit against the monthly payment for labor and materials used to improve the property. Exception enough cash will be paid by the lessee to pay taxes.

not agree to the terms of the writing nor to any oral modifications thereof. According to Mr. Jackson, he insisted from the beginning on a substantial down payment, and the Whites were unable to come up with a sufficient amount of cash at the time. Because the Jacksons were willing to sell to the Whites, the Jacksons claim that they allowed the Whites to rent the homestead property for $100.00 a month while the Whites were attempting to come up with a cash down payment and a written purchase agreement which was acceptable to the Jacksons.

The value of the homestead property increased. The Jacksons contended they were not obligated to sell to the Whites at the 1972 price of $25,000.00, since no satisfactory agreement between the parties had ever been reached. The Whites received a notice to quit the premises in July 1974. They brought suit and were awarded specific performance for sale of the property.

■ Where the existence of an oral contract and the terms thereof are the points in issue and the evidence is conflicting, it is for the trier of the facts to determine whether the contract did in fact exist, and if so, the terms thereof. *B. B. & S. Constr. Co., Inc. v. Stone*, 535 P.2d 271, 273 (Alaska 1975); *Nordin v. Zimmer*, 373 P.2d 738, 741–42 (Alaska 1962).

■ In this case, the court, sitting without a jury and with every opportunity to judge the credibility of all the witnesses, found the existence of an oral contract for sale of the homestead, embodied in the October 29, 1972 writing with oral modifications. Under Civil Rule 52(a),[2] we are bound by this finding unless it is clearly erroneous.[3]

■ Much of the Whites' testimony relating to the existence of the oral contract was contradicted by evidence introduced by the Jacksons.[4] Under the cir-

3—Option; Lessee may purchase the above property within the two (2) year term or option may be extended at the option of the lessor.

4—Pruchase [sic] price; $25,000.00 on note to be carried by lessor, or price may be negotiated if lessee can obtain other financing.

5—Interest and Term; If note be carried by lessor, interest set at 6% per annum, simple, for (20) twenty years and a 10% down payment.

6—Allocate Part Deed; Lessor will on request of lessee and receipt of adequate payment, securities, or agreement give lessee clear title for purpose of building site the following:
A—SW 10 Acres of NW ¼ of NW ¼ Sec. 25 T5N R9W SM

7—Purchase Option; Lessor will not offer above property for sale during term of lease.

8—Maintenance; Lessee will maintain present improvements and confer with lessor before making major changes in buildings or configuration of land.

LESSOR _____

_____

LESSEE _____

_____

DATE _____

The Whites contend that Mr. Jackson agreed to terms 3 through 8 of this writing but requested the following modifications in terms

1 and 2: $100 a month payments for two years instead of improvement credit, said payments to be counted toward a $2500 down payment.

2. Civil Rule 52(a) provides in part:
Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

3. *See, e. g., A.R.C. Industries, Inc. v. State*, 551 P.2d 951 (Alaska 1976); *A & G Constr. Co., Inc. v. Reid Brothers Logging Co., Inc.*, 547 P.2d 1207 (Alaska 1976); *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826 at 833 (Alaska 1974).

4. Credibility choices are for the trier of the facts to make, and his selection will generally be accepted by the reviewing court. This is so for the reason that the fact finder saw the witnesses testify, heard the inflection of their voices and observed their relative candor in answering questions. *B.B. & S. Constr. Co., Inc. v. Stone*, 535 P.2d 271, 274 n. 4 (Alaska 1975). *See also Hendricks v. Knik Supply, Inc.*, 522 P.2d 543 (Alaska 1974); *Nordin Construction Co. v. City of Nome*, 489 P.2d 455, 464 (Alaska 1971); *Alaska Placer Co. v. Lee*, 455 P.2d 218 (Alaska 1969); *Amick v. Metropolitan Mortgage & Securities Co.*, 453 P.2d 412 (Alaska 1969); *Herning v. Wigger*, 398 P.2d 1002 (Alaska

cumstances, we have carefully examined the entire record before us. Guided by both Civil Rule 52(a) and the well-recognized rule that an appellate court must take the view of the evidence most favorable to the prevailing party at trial,[5] we find no clear error that would require us to reverse the trial court's determination that an oral contract existed between the parties.

■■ The next question is whether this oral contract was specifically enforceable. In *Prokopis v. Prokopis*, 519 P.2d 814, 816 (Alaska 1974), we set out the necessary steps for specific enforcement of an oral contract to convey an interest in real property. First, the party seeking specific performance must show that the agreement

was taken out of the statute of frauds[6] by part performance. Next, he must prove a contract sufficiently definite and certain in its terms to warrant the grant of specific performance. The trial court concluded: (1) that the Whites had partially performed under the contract, and (2) that the terms of the contract were definite enough to be specifically enforced. We find that these conclusions are supported by legally sufficient evidence,[7] and are correct as a matter of law.[8] The contract as it was found to exist by the trial court involved specifically identified property, and specified the total purchase price, the term the contract was to run and the interest rate. The only material term missing from the contract was some form of security for

---

1965) ; *Preferred General Agency of Alaska, Inc. v. Raffetto*, 391 P.2d 951 (Alaska 1964).

5. *See, e. g., City of Fairbanks v. Smith*, 525 P.2d 1095 (Alaska 1974) ; *Graham v. Rockman*, 504 P.2d 1351 (Alaska 1972) ; *Chirikoff Island Cattle Corp. v. Robinette*, 372 P.2d 791 (Alaska 1962).

6. AS 09.25.010(b), in effect at the time of conveyance, stated :

No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning the property may be created, transferred, or declared, otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating, transferring, or declaring it or by his agent under written authority and executed with the formalities that are required by law. This subsection does not affect the power of a testator in the disposition of his real property by will, nor prevent a trust's arising or being extinguished by implication or operation of law, nor affect the power of a court to compel specific performance of an agreement in relation to the property.

7. The following evidence shows that the Whites met the requirements for part performance set out in *Treat v. Ellis*, 6 Alaska 290 (Alaska 1920), and *Mitchell v. Land*, 355 P.2d 682, 686 (Alaska 1960)—possession and improvements in reliance on the verbal agreement: The Whites moved onto the land in December 1972 and made improvements with the knowledge and consent of Jackson. They made monthly payments of

$100.00 marked "property payments" on most checks ; Jackson cashed these checks through July 1974. The Whites rented and eventually sold their house in Kenai, and the trial court found that they acted in reliance on the purchase of the homestead. The Whites expended considerable time, energy and money making improvements on the land—valued by the trial judge at $8,000.00. They invested in farming equipment and began some long-term farming projects. They also refinanced a trailer home which was fully paid for, allegedly to raise money for the down payment on the property. *See also Adams v. Waddell*, 543 P.2d 215, 218 (Alaska 1975).

8. On questions of law, the supreme court is not bound by the lower court's views, and the clearly erroneous standard used in reviewing the trial court's factual findings is inapplicable. *Day v. A & G Constr. Co., Inc.*, 528 P.2d 440, 443 n. 3 (Alaska 1974) ; *Peters v. Juneau-Douglas Girl Scout Council*, 519 P.2d 826, 833–34 (Alaska 1974).

Requirements for certainty in land sale contracts in Alaska are set out in the following cases : *Prokopis v. Prokopis*, 519 P.2d 814, 817 (Alaska 1974) ; *Hollaus v. Arend*, 511 P.2d 1074, 1075 (Alaska 1973) ; *Rego v. Decker*, 482 P.2d 834 (Alaska 1971) ; *Lewis v. Lockhart*, 379 P.2d 618 (Alaska 1963) ; *Mitchell v. Land*, 355 P.2d 682 (Alaska 1960). *Cf. Alaska Creamery Products, Inc. v. Wells*, 373 P.2d 505 (Alaska 1962), which treats the same problem in a sale of goods. For a comprehensive treatment of the above cases, see "Requirements of Certainty in Land Sale Contracts in Alaska", 5 UCLA–Alaska L.Rev. 112–151 (1975).

the vendor. In *Rego v. Decker*, 482 P.2d 834, 837 (Alaska 1971), this court directed the trial court to avoid hardship for the vendor by filling in the same "gap" in a contract before ordering specific performance. In the instant case, the trial court properly conditioned specific performance on the execution of a security agreement for the Jacksons.

■ The Jacksons raise the issue of the standard of proof for an oral contract to convey real property in Alaska. The prevailing rule as set out in the Restatement of Contracts (Second),[9] a case from the territorial Alaska court [10] and cases from other jurisdictions,[11] is that a parol contract to convey an interest in land must be proven by "clear and convincing" evidence. We hereby adopt that standard and hold that the party alleging an oral contract to convey land should prove the existence of the contract, its terms and part performance by clear and convincing evidence rather than a mere preponderance of the evidence.

Counsel for the Jacksons asked for a specific statement to be included in the Findings of Fact and Conclusions of Law as to the appropriate standard of proof to be applied in this case. A written objection to the Whites' proposed findings was

filed requesting the court to indicate whether the Whites "proved the existence of the contract by clear and convincing evidence or by a preponderance, as the court may rule appropriate". The findings and conclusions of law, however, do not indicate what standard was applied.

We therefore remanded the case to the superior court for the purpose of having the trial judge indicate the standard of proof which he applied.[12] The trial judge responded by stating:

> *Answer*: After observing the demeanor of plaintiffs and defendants while in court and the demeanor of witnesses for each party in court, and weighing the substance of the testimony of all witnesses, and considering the exhibits and actions and conduct of the parties, the proof was clear and convincing that an oral contract was entered into in accordance with the terms as enumerated in the oral decision, as well as the part performance as enumerated in said decision.

■ Since, as we have previously indicated, the findings were not clearly erroneous and the trial judge has applied the proper standard of proof, the trial court's decision is

AFFIRMED.[13]

9. Sec. 197 (tentative draft 1973).

10. *Treat v. Ellis*, 6 Alaska 290 (1920).

11. *See, e. g., Johnson v. Mosley*, 179 F.2d 573 (8th Cir. 1950); *Ceglowski v. Zachor*, 102 F.Supp. 513 (D.N.D.1951); *Khoury v. Barham*, 85 Cal.App.2d 202, 192 P.2d 823 (1948); *Hill v. Chambers*, 136 Colo. 129, 314 P.2d 707 (1957); *Scott v. Anchor Inn Apartments, Inc.*, 282 So.2d 640 (Fla.App. 1973); *Crouch v. Bischoff*, 76 Idaho 216, 280 P.2d 419 (1955); *Pattimore v. Davis*, 180 Kan. 534, 305 P.2d 835 (Kan.1957); *Webb v. Webb*, 498 S.W.2d 757 (Mo.1973); *Cox v. Williamson*, 124 Mont. 512, 227 P.2d 614 (1951); *Hawkins v. Toombs*, 194 Or. 478, 242 P.2d 194 (Ore.1952); *Granquist v. McKean*, 29 Wash.2d 440, 187 P.2d 623 (1947).

12. In the event that another standard was applied, the trial court was to review the evidence and advise whether he would have resolved the issues differently by applying the standard of clear and convincing evidence. A similar procedure was followed in the case of *Alaska Placer Co. v. Lee*, 553 P.2d 54 (Alaska 1976).

13. The Jacksons also object to the introduction of certain hearsay evidence from William White. We find that any error was harmless because White's testimony was merely cumulative of other testimony introduced. *See, e. g., Otis Elevator Co. v. McLaney*, 406 P.2d 7 at 11–12 (Alaska 1965).