John RENFROE, Appellant and Cross-Appellee,

v.

Robert C. GREEN; Klaus Holzer; Kodiak Island Borough; Kodiak Island Borough School District, Appellees and Cross-Appellants.

File Nos. 4394, 4481.

Supreme Court of Alaska.

Nov. 28, 1980.

---

John R. Strachan, Anchorage, for appellant and cross-appellee.

Charles K. Cranston, Cranston, Walters, Dahl & Jarrell, Anchorage, for appellees and cross-appellants.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

MATTHEWS, Justice.

This appeal concerns the dismissal of a tenured teacher for "incompetency" and "substantial noncompliance with the school laws of the state," pursuant to AS 14.20.-170,[1] based on events arising from an incident involving appellant and a special education teacher, Klaus Holzer.

In October, 1975, Holzer arrived at the village of Larson Bay, the location of Renfroe's teaching assignment, to conduct special education testing of village students. During the evening of the second day of his visit, Holzer called at Renfroe's quarters to discuss some of the results of his tests. Renfroe apparently thought that Holzer was interfering in areas beyond his responsibility. An argument ensued after which Renfroe ordered Holzer to leave. The next day, Holzer went to the school to say goodbye to Renfroe prior to his departure from the village. Their continuing disagreement escalated into an altercation and Renfroe pushed Holzer down some stairs. The final events of the "Holzer incident" were described by Holzer as follows:

> I told John [Renfroe] 'I have come to say goodbye and that I want to help kids too.' He said 'O. K., get your shit (pointing to the library) and get your ass out of here.' I said I already had my materials and that I just wanted to say goodbye, and that those kids are my concern. 'Get out of here, you fucking know-it-all, keep your nose out of matters that don't concern you. Get the hell on that fucking plane and go back to Kodiak.' At that point I didn't say another word and opened the door to leave. I had the door opened approximately one half way when John grabbed me by the back of my

---

1. AS 14.20.170(a) provides:

   *Dismissal.* (a) A teacher, including a teacher who has acquired tenure rights, may be dismissed at any time only for the following causes:

   (1) incompetency, which is defined as the inability or the unintentional or intentional failure to perform the teacher's customary teaching duties in a satisfactory manner;

   (2) immorality, which is defined as the commission of an act which, under the laws of the state, constitutes a crime involving moral turpitude; or

   (3) substantial noncompliance with the school laws of the state, the regulations or bylaws of the department, the bylaws of the district, or the written rules of the superintendent.

jacket and pushed me down the stairs.... He said, 'Get the fuck out of here and keep your nose out of matters that don't concern you.' ... I looked up and saw the entire class looking out the window at the spectacle. I felt ashamed of this type of conduct in front of children. John again shouted 'Get get the fuck out of here.' I said, 'John, this is a public building, I am a teacher and I have a right to be in it.' He smiled and said, 'Yeh, but I am in charge.' I didn't argue the point.... John shouted some more obscenities as I left, but I didn't respond. I simply waved him off behind my back. I picked up my duffle bag and proceeded to walk towards the cannery.

This event was witnessed and heard by several of the village school children. Holzer left Larson Bay, and upon his return to Kodiak, was directed to prepare a report of the incident. Assistant Superintendent Robert Stokes then went to Larson Bay to inform Renfroe of Holzer's charges and order Renfroe to accompany him to Kodiak to meet with Superintendent Robert Green and help achieve a fair resolution to the problem. When Renfroe refused, he was given a letter of temporary suspension pending investigation.[2] A follow-up letter was sent a week later ordering Renfroe to vacate the teacher's quarters at Larson Bay and proceed to Kodiak. When Renfroe again failed to do so, the board obtained a court order to effect his compliance. Renfroe then went to Kodiak, and found Superintendent Green out of town. When Green returned, Stokes hand delivered a letter to Renfroe informing him of a school board meeting two days hence at which an informal hearing on the matter would be held. Stokes requested that Renfroe attend this hearing and once again asked Renfroe to meet with the superintendent. Renfroe refused both requests. The school board did conduct an informal discussion of the matter in Renfroe's absence, two days later. No action was taken at that meeting.

Four days after the informal session the board reconvened, voted to dismiss Renfroe, and sent his notice and a bill of particulars as required by statute.[3] Renfroe then requested a hearing before the board. One was held several months later at which Renfroe was represented by counsel, called witnesses, and presented evidence in his behalf.[4] The board's decision was again adverse to Renfroe, and he requested de novo review.[5] A superior court trial result-

2. AS 14.20.170(b) provides:
    (b) A teacher may be suspended temporarily with regular compensation during a period of investigation to determine whether or not cause exists for the issuance of a notification of dismissal according to § 180 of this chapter.

3. AS 14.20.180 provides:
    *Procedure and hearing upon notice of dismissal or nonretention.* (a) An employer shall include in a notification of dismissal of a teacher who has not acquired tenure rights, or of nonretention or dismissal of a tenure teacher, a statement of cause and a complete bill of particulars.
    (b) The tenure teacher may, within 15 days immediately following receipt of the notification, notify the employer in writing that he requests a hearing before the school board. The tenure teacher may require in the notification that
    (1) the hearing be either public or private,
    (2) the hearing be under oath or affirmation,
    (3) he have the right of cross-examination,
    (4) he be represented by counsel,
    (5) he have the right to subpoena a person who has made allegations which are used as a basis for the decision of the employer.
    (c) Upon receipt of the notification requesting a hearing, the employer shall immediately arrange for a hearing, and shall notify the tenure teacher or administrator in writing of the date, time, and place of the hearing. A written transcript, tape, or similar recording of the proceedings shall be kept. Transcribed copies shall be furnished to the tenure teacher for cost upon his request. A final decision of the school board requires a majority vote of the membership. The vote shall be by roll call. The final decision shall be written and contain specific findings of fact and conclusions of law. A written notification of the decision shall be furnished to the tenure teacher within 10 days of the date of the decision.

4. *See* note 3, *supra.*

5. AS 14.20.205 provides:
    *Judicial Review.* If a school board reaches a decision unfavorable to a teacher, the teacher is entitled to a de novo trial in the superior court. However, a teacher who has

ed in affirmance of Renfroe's dismissal, and this appeal follows.

■ Renfroe's first contention on appeal is that the superior court erred in failing to direct a verdict or enter a judgment notwithstanding the verdict in his favor. Renfroe argues that because the school board failed to afford adequate notice of the charges against him or a hearing on those charges prior to issuing its letter of temporary suspension, the suspension and subsequent dismissal were void. Since at this juncture it is the legality of the dismissal which is at issue, and not the suspension, there is no reason to determine whether the suspension was illegal. Renfroe has not demonstrated any way in which his dismissal was tainted by his temporary suspension with pay under AS 14.20.170(b), nor any other way in which he was prejudiced by the suspension. We thus find Appellant's contention that the dismissal proceedings were void as a matter of law to be without merit.

Renfroe also claims that the court should have directed a verdict in his favor because the "Holzer incident" was too trivial to support charges of incompetency or substantial noncompliance under AS 14.20.-170(a). That statute provides for dismissal of any teacher based on: "(1) incompetency, which is defined as the inability or the unintentional or intentional failure to perform the teacher's customary teaching duties in a satisfactory manner;" or, "(3) substantial noncompliance with the school laws of the state, the regulations or bylaws of the department, the bylaws of the district, or the written rules of the superintendent." One such provision is AS 14.20.-

480, which provides that members of the teaching profession are obligated to abide by the standards of the Professional Teaching Practices Commission, which, in turn, state:

> In fulfilling his obligation to the student, the educator
>
> .     .     .     .     .
>
> Shall make reasonable effort to protect the student from conditions harmful to learning or to health and safety;
> Shall conduct professional business in such a way that he does not expose the student to unnecessary embarrassment or disparagement;

and:

> In fulfilling his obligation to the profession, the educator
>
> .     .     .     .     .
>
> Shall accord just and equitable treatment to all members of the profession in the exercise of their professional rights and responsibilities.

■ There is evidence that Renfroe verbally and physically abused another member of the teaching profession in front of students. Since fair minded jurors, in the exercise of reasonable judgment, could differ on whether Renfroe's actions violated the above provisions of the Code of Ethics or otherwise constituted incompetency or substantial noncompliance under AS 14.20.-170(a), the superior court did not err in failing to direct a verdict in Renfroe's favor.[6]

Renfroe next claims that the superior court erred in instructing the jury to limit its inquiry to the issue of his substantial noncompliance under AS 14.20.170(a)(3),[7]

---

not attained tenure rights is not entitled to judicial review according to this section.

6. *See Beaumaster v. Crandall,* 576 P.2d 988, 994 (Alaska 1978); *Sloan v. Atlantic Richfield Co.,* 541 P.2d 717, 723 (Alaska 1975).

7. The instruction objected to provided:
   There has been testimony in this trial regarding a hearing before the School Board and other Board procedures, including executive sessions, taken with respect to Mr. Renfroe. That evidence has been admitted to present the general setting in which the al-

leged breach of contract by the School Board took place. However, such evidence is not to be regarded as tending to prove a breach of contract by the Board, since the only issue to be decided regarding the conduct of the defendant is whether in terminating the contract defendant properly found substantial non-compliance by planiff with the school laws of the state, the regulations or by-laws of the department, or the by-laws of the defendant school board. Accordingly, I advise you that in determining whether or not Mr. Renfroe's contract was breached by the

while refusing to give several other requested instructions.[8] Renfroe also claims error in the court's inclusion of an instruction on provisions of the Professional Teaching Practices Commission Code of Ethics when no determination that Renfroe had violated the Code was obtained from the Commission.[9]

■ For the same reasons that the court was correct in refusing to direct a verdict in favor of Renfroe, we believe the instructions given embodied a correct statement of the law governing this case. Similarly, we believe that the refused instructions could pertain only to the validity of Renfroe's initial suspension, which was not relevant to the propriety of his actual dismissal. The

superior court therefore committed no error in instructing the jury as it did.

■ Finally, Renfroe alleges reversible error because an exhibit excluded from evidence made its way into the jury room due to the inadvertence of a court clerk. Since this exhibit, "Exhibit R," contained the transcript of prior proceedings before the school board, Renfroe argues that his right to trial de novo was violated and a mistrial should have been declared.

When the trial judge became aware of the possibility that an excluded exhibit had been submitted to the jury, he conducted an examination of ten of the twelve jurors.[10] Four had no specific recollection of Exhibit

---

School Board you are to disregard any evidence tending to show that the board itself was not in compliance with its own or state procedures. You are to look only to the question of whether or not defendant has proved by a preponderance of the evidence that there was substantial non-compliance by plaintiff with the laws, regulations, or by-laws as noted.

8. The requested instructions provided:
   Failure by the school district to follow the statutory requirements, regulations of the Department of Education, and the negotiated agreement between the Education Association and the District affecting the plaintiff's dismissal renders that dismissal void.
   The plaintiff is entitled to the benefit of his position as a teacher in the Kodiak Island School District, including salary, unless and until he is lawfully separated from that position.
   A tenure teacher has a constitutionally protected property interest in the continuation of his employment which he cannot be deprived of without due process of law. Suspension or discharge of a teacher prior to the expiration of the term of his or her contract is a very serious matter and may cause substantial injury. Specifically such suspension or discharge may cause economic hardship, create a stigma of incompetence and blemish the teacher's professional reputation, decrease the possibility of other educational employment opportunities, deny the teacher the opportunity to pursue a chosen professional activity, and disrupt an existing educational relationship between teacher and student. In view of the potential serious injury which would result from an unjustifiable or arbitrary discharge or suspension, except in extraordinary circumstances where a teacher's conduct would constitute a present and serious and imminent threat to the physical

or psychological well-being of students, a teacher cannot be suspended or discharged without the holding of a hearing prior to any suspension or discharge.

9. That instruction provided:
   Section 14.20.480 Alaska Statutes provides as follows: "Section 14.20.480, Effect of Standards. Members of the teaching profession are obliged to abide by the professional teaching standards adopted by the commission." You are further instructed that the commission referred to above is defined in Section 14.20.380 as a commission of professional educators known as the Professional Teaching Practices Commission. You are hereby instructed that the Alaska Professional Teaching Practices Commission has adopted a code of ethics of the education profession which provides in part, "Principle 1, Commitment to the Student. In fulfilling his obligation to the student, the educator shall make reasonable effort to protect the students from conditions harmful to learning or to health and safety, and shall conduct professional business in such a way that he does not expose the student to unnecessary embarrassment or disparagement." You are hereby instructed that the Alaska Professional Teaching Practices Commission has adopted a code of ethics of the education profession which provides in part, "Principle 3, Commitment to the Profession. In fulfilling his obligation to the profession, the educator shall accord just and equitable treatment to all members of the profession in the exercise of their professional rights and responsibilities."

10. The other two jurors were out of town, and Renfroe's counsel waived any further proceedings with respect to these jurors.

R being in the jury room. Three recalled it being there, but expressly disavowed having relied on it.[11] Another juror did not recall anything about the exhibit. The two remaining jurors examined did recall an oral reading from Exhibit R.

It appears, however, that one of these two jurors had confused Exhibit R with the shorter Exhibit Q, which had been admitted into evidence and was properly before the jury. Her testimony referred to persons and events which only appear in Exhibit Q, and not in Exhibit R. She also testified that Exhibit R was read in its entirety, which is highly unlikely in light of its 149 page length. Her testimony is also contradicted by the remaining juror. That juror, the foreman, testified that he read aloud nearly all of Exhibit Q, which is only nine pages long. He further stated that only portions of the first five pages of Exhibit R were read.[12]

An examination of those pages discloses nothing damaging to Renfroe, nor does it disclose information not already in evidence. In fact, nowhere in the entire exhibit is there material which is significantly different from that which was properly before the jury. Because the contents of the extraneous exhibit were merely cumulative there could have been no prejudice to Renfroe. Thus the inclusion of the exhibit was harmless,[13] and the superior court did not abuse its discretion in refusing to declare a mistrial.[14]

The judgment of the superior court upholding the decision of the school board is therefore AFFIRMED.

---

**11.** One of these did testify, however, that part of everything in the jury room was read aloud.

**12.** As jury foreman, this juror did the oral reading in question and is therefore likely to have the most accurate recollection of the circumstances.

**13.** Alaska R.Civ.P. 61. *See Marrone v. State,* 359 P.2d 969, 979 (Alaska 1961); *see also Miller v. United States,* 4 F.2d 384, 385 (9th Cir. 1925); *Beech Aircraft Corp. v. Harvey,* 558 P.2d 879, 886–7 (Alaska 1976); *Jackson v. White,* 556 P.2d 530, 534 (Alaska 1976); *Gregory v. Padilla,* 379 P.2d 951, 954 (Alaska 1963).

**14.** Alaska R.Civ.P. 59.