

**A.C. BUSWELL, Jr. and Lucille Buswell, Appellants,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

No. S–506.

Supreme Court of Alaska.

March 7, 1986.

Karl L. Walter, Jr., Anchorage, for appellants.

Thomas Klinkner, Asst. Mun. Atty., Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This is an appeal from a superior court order permanently enjoining the Buswells from conducting a natural resource extraction operation without first obtaining a conditional use permit as required by Anchorage Municipal Code 21.40.240(D)(4). The superior court concluded from the evidence presented that the Buswells' removal of gravel from their property constituted a "natural resources extraction" as defined by AMC 21.35.020(B)(59). The question presented for review is whether the court's findings of fact are adequate to support its conclusion that the Buswells are subject to the conditional use permit requirement.[1] We affirm the superior court's order.

The Buswells own land which is zoned for unrestricted use. Under AMC 21.40.-

---

1. We decline to address the constitutional arguments raised by the Buswells, finding them to be wholly without merit.

240 [2] they are permitted to engage in natural resource extraction only if they first obtain a conditional use permit.[3] "Natural resources extraction" is defined by AMC 21.35.020(B)(59) as

commercial or industrial operations involving removal of timber, native vegetation, peat, muck, topsoil, fill, sand, gravel, rock, or any mineral and other operations having similar characteristics.

The Buswells plan to build warehouses on their land. The parties have stipulated that this project may require the excavation of up to 124,608 cubic yards (235,509 tons) of material. The Buswells' son has contracted to remove the material for one dollar a load, and the agreement provides that the excavation will take place over three consecutive construction seasons.

Approximately 5,500 cubic yards of earth and gravel have already been removed from the property. This material was loaded onto trucks, weighed on a weight scale on the property, and transported to a construction site in Eagle River. The municipality's zoning code enforcement officer estimated that the traffic in and out of the property during this operation averaged ten trucks an hour.

The Buswells contend that the current removal of material is nothing more than site preparation incidental to the planned warehouse construction. They also contend that the excavation is not a natural resource extraction because it is not commercial in nature, since they are paying their son to remove the material and are not themselves selling the gravel to anyone.

The superior court found that the Buswells have not yet taken any substantial action toward the construction of warehouses and concluded that the principal use of the property is currently gravel removal. The superior court also inferred from the characteristics of the gravel removal that the Buswells' operation satisfies the municipal code's definition of a natural resource extraction.

On questions of law, the supreme court is not bound by the lower court's views. Instead, we apply our independent judgment to determine whether the legal conclusions which the court has drawn from its findings of fact are correct. *Jackson v. White,* 556 P.2d 530, 533 n. 8 (Alaska 1976). We may affirm a legal conclusion which is correct even if we believe that the lower court reached that conclusion on the basis of erroneous reasoning. *Carlson v. State,* 598 P.2d 969, 973 (Alaska 1979); *Stordahl v. Government Employees Insurance Company,* 564 P.2d 63, 67 n. 16 (Alaska 1977).

It is not necessary for this court to address the superior court's finding that gravel removal is the "principal use" of the Buswells' property because this finding is not necessary to the legal conclusion that a permit is required. Although AMC 21.40.-240(B) does refer to "permitted principal uses and structures," AMC 21.40.240(D) is an equal and independent provision which requires a conditional use permit for *any* activity which falls under the definition of "natural resource extraction," regardless of whether that activity is the principal use of the U-zoned property.

The superior court correctly concluded that the activity on the Buswells' property is a natural resource extraction. The Buswells place too much emphasis on the fact that they receive no compensation for the

---

2. AMC 21.40.240 reads in part:
   The following statement of intent and use regulations shall apply in the U district:
   \*   \*   \*   \*   \*   \*
   B. Permitted principal uses and structures. Residential, business, commercial, industrial, public or quasi-public uses except those prohibited uses specified in subsection E, and those permitted only by conditional use as specified in subsection D.
   \*   \*   \*   \*   \*   \*

D. Conditional uses. Subject to the requirements of the conditional use standards and procedures of this title, the following uses may be permitted:
   \*   \*   \*   \*   \*   \*
   4. natural resource extraction.

3. The procedures and standards for obtaining a conditional use permit are set forth in AMC 21.15.030 and AMC 21.50.070.

gravel. The municipal code should not be interpreted so narrowly. Natural resource extractions can be commercial or industrial operations or *"other operations having similar characteristics."* AMC 21.35.-020(B)(59) (emphasis added). Despite the fact that the Buswells do not personally sell their gravel, their operation has all the relevant characteristics of a commercial excavation—removal of a large volume of material over a substantial time period, a high volume of truck traffic in and out of the property, use of the type of equipment generally associated with a commercial operation, and, most importantly, an impact on the surrounding neighborhood similar to that of a commercial operation. These characteristics are the ones that the permit requirements are designed to address.[4]

While a conditional use permit would not be necessary for a small non-commercial excavation with a minimal impact on the surrounding area, a project which potentially involves the excavation of more than 200,000 tons of gravel over three construction seasons is substantial enough to fall within the definition of a "natural resource extraction" We AFFIRM the order below.

---

**4.** The standards for approval of a conditional use permit for a natural resource extraction are set forth in AMC 21.50.070(B):

> The Planning Commission may approve a natural resource extraction conditional use only if the commission finds that the use meets the following standards:
> 1. Principal access to the site shall minimize the use of residential streets, and access roads shall be treated in a manner so as to make them dust-free. Where access roads intersect arterials, suitable traffic controls shall be established.
> 2. The extraction operations will not pose a hazard to the public health and safety.
> 3. The extraction operations will not generate noise, dust, surface water runoff or traffic that will unduly interface with surrounding land uses.
> 4. The restoration plan for the site assures that after extraction operations cease, the site will be left in a safe, stable and aesthetically acceptable condition.
> 5. The proposed use meets such additional standards for natural resource extraction conditional uses as the director of the Department of Community Planning may establish by regulation pursuant to Chapter 3.40 of this code.