Tony **PALMIERO** and Ruby Palmiero,
husband and wife, Appellants,

v.

**SPADA DISTRIBUTING COMPANY,**
Inc., a corporation, Appellee.

No. 14017.

United States Court of Appeals
Ninth Circuit.

Dec. 6, 1954.

Stephen E. Chaffee, Sunnyside, Wash.,
Kenneth C. Hawkins, Yakima, Wash.,
for appellants.

Irving Korn, Portland, Or., Michael J.
Kerley, Spokane, Wash., for appellees.

Before BONE, FEE and CHAM-
BERS, Circuit Judges.

BONE, Circuit Judge.

On March 27, 1952, Tony Palmiero,[1]
a potato grower who had White Rose and
Russet potatoes planted on fifty-seven
acres on his farm, and Spada Distribut-
ing Company, Inc., a potato dealer, en-
tered a written contract whereby Pal-

1. Ruby Palmiero was joined apparently
because real property was involved.

"Palmiero," as used in the opinion, will
refer to Tony Palmiero.

miero agreed to sell all of the potatoes grown by him on a certain piece of land to Spada, delivery to be in proper season, for the market price at the time of delivery, but without specification as to time of payment. Spada was given a security interest in the crop for loans and advances and a liquidated damage clause was included.

Spada contended that on May 28 it entered another oral contract with Palmiero, evidenced by its check to Palmiero for $1500.00, which he cashed, and by a voucher attached reading:

"advance on potatoes—10 cars Russets US#1 @ $50.00 ton less sorting—5 cars Longwhites US#1 @ $45.00 ton less sorting—delivery before Sept. 10th Prosser acct."

Palmiero denied there was an oral contract.

On July 31, 1952, Spada told Palmiero that on August 4 he would have to start making deliveries of potatoes to Spada on this claimed oral contract. To this Palmiero did not agree, and the evidence was conflicting as to whether he positively refused. In any event, he made deliveries to Spada on August 1, for which the prices agreed to by Spada and Palmiero were $80.00 a ton for No. 1s and $50.00 per ton for No. 2s, the market price at time of delivery, in accordance with the March written contract. On August 4, Palmiero made deliveries for which Spada credited him by slips delivered about August 6 $50.00 per ton for Russets and $45.00 for Longwhites, in accordance with the oral agreement. On August 5, Palmiero commenced making sales of the potatoes raised on this field to other persons, and thereafter delivered no potatoes to Spada.

Palmiero and Spada then engaged in litigation. In due course, in the District Court a pre-trial conference was held and a pre-trial order outlining the contentions of the parties entered. Spada claimed there was an oral contract of May 28, and that there was an anticipatory breach of this agreement by Palmiero. The latter contended that there was no oral contract as claimed, and there was a breach by Spada of whatever contract was in effect. There was also disagreement among the litigants as to whether the oral agreement was in modification of the original written agreement and, if so, how far the modification extended. There was emphatic disagreement as to measure of damages and as to whether the liquidated damages clause of the original agreement applied to deliveries under the oral contract.

The case was put on trial before a jury. A great deal of testimony was taken. The trial judge apparently on the morning of the final day of trial of his own motion decided "there were surprisingly few questions of fact * * * to be decided by the jury," and that he would not take a general verdict, but would "submit a special verdict to the jury in the form of interrogatories." Thereafter, only two interrogatories were submitted by the judge to the jury and answered.[2] Thus there were established as facts (1) that there was an oral contract as claimed, (2) that on July 31 Spada's representative had directed Palmiero to deliver on such contract on August 4. No general verdict was asked or received.

There were exceptions by the Palmieros, as the case went to the jury, to the giving of the interrogatory regarding the direction by Spada to Palmiero to deliver on the oral contract on August 4 on the ground it was immaterial and that further issues of fact were involved and to the failure of the court to give the interrogatory requested by Palmiero, reading:

"Did Tony Palmiero agree that the potatoes delivered on August 4, 1952, could be applied on the oral agreement, if any?"

The court thereafter entered a series of supplemental findings and conclusions,

---

**2.** There were in fact three questions, but the answer to Question 1 made unnecessary answer to Question 2.

wherein over and above the facts decided by the jury the court determined either expressly or by implication (1) the terms of the oral contract, (2) that the oral contract modified the written contract in certain terms and not in others, (3) that there was a new oral contract whereby Palmiero was bound to deliver beginning on August 4, whereas the oral contract of May 28 allowed him to September 9 in the form Spada claims, (4) that Spada was willing to carry out the contracts and there was no breach of contract on the part of Spada, (5) that Palmiero breached both the written and the oral contracts.

The Palmieros object here to the findings in certain respects and to the failure of the court to submit interrogatories covering the issues raised by defendants' proposed instructions.

When this case came up on appeal, this Court was of the impression that a suit in equity for injunction was before the Court and that the trial court had called a jury as advisory. The truncated record before us heightened the impression. The complaint sets out a contract relating to the potato crop growing on Section 34, Township 10, Range 24, Benton County, Washington, and attaches the written contract and claims irreparable damage in case of breach. There is no allegation of specific damages. The relief asked is that defendants "be required specifically to perform all the terms of the crop growing and marketing agreement on their part to be kept and performed." A temporary restraining order is asked until hearing on an order to show cause. A preliminary injunction was also prayed "during the pendency of the cause." Finally, plaintiff Spada Distributing Company demands that "defendants Tony Palmiero and Ruby Palmiero be permanently enjoined and restrained" from selling the potato crop grown on the described land to anyone other than plaintiff.

There was an answer which set up affirmative defenses which raise essentially legal issues and prayed for damages. There was a pre-trial order which dealt with admissions and contentions but does not formulate issues. It then did not seem illogical that a jury was present, and the trial judge told them that "when you have ten of you agreed upon the answers to the questions, your foreman will sign it and you will notify the bailiff that you are ready to return your verdict." It was not a matter of surprise either, upon the assumption that the jury was advisory, that the court of its own motion determined that the cause should be submitted to the jury on special interrogatories. The determination is expressed as follows:

"The Court: In looking over the proposed instructions submitted by the parties here, it occurred to me that most of these questions that I think will be decisive of the lawsuit are questions of law, and that there were surprisingly few questions of fact, it seemed to me, to be decided by the jury as the arbiter of the facts. I was particularly impressed by the fact that if I gave the requested instructions of the defendant, it would be a useless gesture submitting the case to the jury, because they would decide the lawsuit.

"Now it seems to me, in view of the turn that the case has taken, that it would be the easiest, perhaps, and the best method to pursue here to submit a special verdict to the jury in the form of interrogatories to be answered by them.

"I might say that in view of the fact that the Court has had such a hard time making up its mind whether a special verdict or general verdict should be given, that I will not raise any objection to the form of your proposed instructions and will consider them as being worded to fit with the special verdict, and it won't be necessary for you to re-word any of these. If there is anything in here that should apply, should be given under a special verdict, I will give it, even if it is necessary to rephrase it, and you will not be precluded from making any ob-

jection to any failure to submit any issue of law that is contained in your instructions because of the form of them, being put in the form of a general verdict. I think that is only fair in view of the fact that I have changed my mind at this late date.·

"If there is no further comment then, you can bring in the jury."

Confusion arose, however, when it was discovered that, after the entry of the findings of fact, in answer to the two special interrogatories propounded, the learned judge made a whole series of determinations of fact questions which were decisive. These have been noticed above. After the submission to the jury of the two questions of fact which the jury answered and the court indicated would be controlling as to the facts, it seemed at first blush unfair that there should have been entered decisive and devastating fact findings as to matters not offered at the time of trial as issues of fact by the court or opposing counsel.

The confusion became intensified when the record showed that a waiver of jury trial was relied upon, for until this was discovered it had been assumed this was a suit in equity with an advisory jury. The recital of this part of the judgment reads:

"Whereupon, said verdict was duly received, and

"It is Hereby Ordered that the said verdict be entered of record, and

"Rule 49(a) of the Rules of Civil Procedure for the United States District Court [28 U.S.C.A.] provides that if, in submitting a special verdict, the court omits any issue of fact raised by the pleadings, or by the evidence, each party waives his right to a trial by jury of the issues so omitted, unless before the jury retires, he demands its submission to the jury, and said rule further provides that as to an issue omitted

without such demand the Court may make a Finding, and

"The Court, Being Fully Advised in the Premises, pursuant to Rule 49(a) of the Rules of Civil Procedure for the United States District Courts, now for the purpose of supplementing the findings contained in the jury's special verdict, makes the following

### "Findings of Fact"

At the argument, under questioning by this Court, counsel explained and thus dissipated a great deal of the mists surrounding this proceeding.

Thus enlightened, this Court is able to infer the course of the proceeding from those portions of the record which are before us. All equitable issues had apparently passed out of the case before trial. The cause was tried as though it were an action at law for damages for breach of contract with Palmiero as plaintiff and Spada as defendant.[3] The parties, apparently by agreement, consented to a decision by ten out of the twelve jurors. Otherwise, the parties and the trial court treated the jury as present by constitutional right to decide an action at law for damages.

In the light of this understanding which is drawn from the record, the question of whether Palmiero was prejudiced by the failure of the trial court to take a general verdict is presented. There were in the hands of the judge numerous requests by counsel for Palmiero for instructions which raised other issues of fact. Indeed, as the Court said in the statement above quoted, "they would decide the lawsuit." This Court does not entirely absolve counsel for Palmiero of blame, because, by the insistence on the position that there was no oral contract, the trial judge was seemingly misled into the belief that this was the only issue.

This Court does not pass upon the constitutionality of Rule 49(a). No crit-

---

**3.** Spada took the lead, but Palmieros were treated as plaintiffs, although called "de-

fendants." Spada is seeking damages also, however.

icism is intended of the learned district judge, who, in the hurry of a hard fought trial, desired definite answers of a jury to factual propositions. However, the Palmieros were actually deprived of jury trial on important issues of fact. The interrogatories submitted to the jury and the two answers given were not actually decisive of the factual issues. The court did not carry out the suggestion implied in the remarks above quoted that he would give interrogatories which would fit with the instructions requested by the Palmieros.[4] This failure to give a vital question and objection to another interrogatory given as immaterial and indecisive of the actual issues was objected to before the jury retired, and therefore the points are saved for our consideration. If Rule 49(a) is valid, the waiver must be made consciously and intentionally. It is true, this might be inferred from a failure to object, but that is not the case here.

The unintended result of this was that the counsel for the Palmieros probably were led astray and led to believe that the interrogatories submitted to the jury would cover all the substantial issues of fact. One of the points on appeal is that the learned trial judge did not carry out what counsel were justified in believing was meant. The voluminous and pointed findings, which were made by the court after the jury was excused, bring into a highlighted foreground the fact that many decisive issues were not submitted, but were decided after the jury had been discharged. The court recites in the supplemental findings:

"When, about July 31, 1952, as the jury found in its special verdict, the plaintiff's representative, Byard B. Slocumb, told defendant, Tony Palmiero, that on August 4, 1952, Palmiero would have to start making deliveries of potatoes on the May contract, *said defendant did not expressly agree, or acquiesce, in the delivery of the potatoes on that day, to apply on the May contract; but on the contrary, he did not definitely decline to make such deliveries, and he did not offer to make deliveries under the May contract at some future time, or at all. At that time, Tony Palmiero said to Byard B. Slocumb, in substance and effect, that he, Palmireo, wished to 'get out of' the May contract, and that he wished to discuss the matter with plaintiff's field representative, Mr. Howard Michaelis.*"

The italicized portion of this finding was made by the court. This portion of the finding is absolutely immaterial, incompetent and irrelevant. If, as the jury found, there was an oral agreement of May 28, for the sale of five cars of Longwhites and ten cars of Russet potatoes, then plaintiff, according to the terms of the check and the voucher, apparently had the right to deliver on or before September 10. Furthermore, Howard Michaelis, one of the key witnesses for plaintiff, testified, "Mr. Palmiero could at his discretion buy potatoes any time to fill the contract that he was selling. I mean it was possible he could do that."

The whole basis of the findings of the trial judge upon which there was a supposed conclusion of law that an "anticipatory breach" of this oral contract by Palmiero is removed. Actually, the question of breach of any contract, oral or written, is a question of fact to be left to the trier of fact, which in this case should have been the jury.

An anticipatory breach of contract is not established by a negative attitude or one which indicates more negotiations are sought or that the party may finally perform. There was evidence which had cross currents on this question, and the court should have submitted it to the jury.

If Spada were to rely upon the conversation of July 28 with Palmiero as

---

4. See the remark of the court quoted above, "If there is anything in here that should apply, should be given under the special verdict, I will give it * * * ."

a breach, it would be doubtful that a jury could find therein "a positive statement to the promissee" that "the promissor will not * * * substantially perform his contractual duties," or any other factors required for "an anticipatory repudiation which is a total breach of contract." Restatement of the Law of Contracts, § 318. In "Contracts," 12 Am.Jur. § 393, is found the statement:

"In order to justify the adverse party in treating the renunciation as a total breach, the refusal to perform must be of the whole contract or of a covenant going to the whole consideration, and it must be distinct, unequivocal, and absolute."

Both of these texts have the approval of the Washington Supreme Court in Walker v. Herke, 20 Wash.2d 239, 147 P.2d 255, 262, where each of these excerpts is quoted and given weight. The law of the state controls our action in this regard.

For Palmiero to be held liable for breach, on that day he must have positively refused to deliver potatoes, called for by the oral modification of May 28, at all before September 10. There is evidence that he delivered some potatoes on August 4. If Palmiero did enter into a modification of the contract of May 28, which required him to make immediate delivery thereunder, or if he did not definitely offer and specify delivery as under the contract of May 28, this delivery on August 4 was, putatively at least, under the written contract. If Spada did not pay at market prices on delivery on August 4 by crediting Palmiero, then a jury might have found it broke the written contract. This is true whether the oral contract modified the written one or not. The net effect of the action of the judge was to read the limitation "before September 10" out of the May 28 agreement and make delivery at Spada's option. It is true, a jury might find such was the oral contract, but Spada apparently does not even yet contend for such a position.

This brings forcibly to attention another finding of the trial court:

"* * * the evidence clearly shows that the parties by their conduct and their actions contemplated, understood and agreed that said 15 cars of potatoes involved in the May 28, 1952, contract were removed and taken out of the 15¢ per cwt., liquidated damage provision contained in the Crop Growing and Marketing Agreement of March 27, 1952."

The construction of an oral contract and the acts and conduct of the parties as modifying a written contract is not for the court, but for the jury. The learned judge, in the hurry of the trial, overlooked submitting an issue of fact to the jury as to whether the oral agreement of May 28 was supposed to relate to the same potatoes as were covered by the written document relating to the potatoes in the field under contract. In this connection, if the oral agreement modified the written contract, then the clause as to liquidated damages might well have applied to all deliveries. This was another fact for the jury to decide. But it was a jury question as to what potatoes the oral agreement related and as to when deliveries were required.

The jury found a demand was made on the oral contract for delivery commencing on August 4 by an agent of defendant. There is no finding by judge or jury that Palmiero was required to deliver these potatoes until September 9.

This Court does not pass upon any question of fact in the case. There is attempt to find neither whether there is substantial evidence to support any finding nor whether any is clearly erroneous. A new trial is required to do justice between the parties.

Reversed.