## Richmond

# BOARD OF SUPERVISORS OF FAIRFAX COUNTY AND H.L. RUST COMPANY

### v.

# ECOLOGY ONE., INC., ET AL.

June 9, 1978

Record Nos. 770268 and 770269

Present: All the Justices.

30

*David T. Stitt, Assistant County Attorney; Daniel Webster Coon (Frank B. Perry, III; Frederic Lee Ruck, County Attorney; Leslie J. Roos, Assistant County Attorney; Phillips, Kendrick, Gearheart & Aylor,* on brief) for plaintiffs in error.

*Guy O. Farley, Jr. (Farley, Harrington & Sickels,* on brief), for defendants in error..

No brief for Republic Insurance Company, defendant in error

*Amicus Curiae:* American Insurance Association *(John M. Edsall; Stanley C. Morris, Jr. [D.C.]; Roger E. Warin [D.C.]; John D. Alkire [D.C.]; Steptoe & Johnson [D.C.], on brief) for defendant in error.*

I'ANSON, C.J., delivered the opinion of the Court.

This action was instituted by the Board of Supervisors of Fairfax County (County) against Ecology One, Inc., a residential housing development corporation, Forrest W. Stout, Edward Gwathmey, Jr., Buford W. Duke, Jr., R. David Winesett, Jr., and James J. Hricko, all hereinafter referred to collectively as Ecology, and Republic Insurance Company (Republic) to recover judgment jointly and severally against Ecology as principal, and Republic as surety on a bond, as a result of Ecology's alleged breach of its contract with the County to construct streets and drainage facilities in a residential subdivision Ecology was developing in Fairfax County.

Pursuant to Rule 3:10(a), Rules of Court, Republic filed a third party motion for judgment against H.L. Rust Company (Rust) alleging that Rust would be indebted to Republic if the County obtained a judgment against it in this proceeding.

The case was heard by a jury but, at the conclusion of the County's evidence, the trial court sustained the motion of Ecology and Republic to strike the County's evidence and summary judgment was entered accordingly. The County and Rust filed separate petitions for appeal, which we granted and consolidated for hearing.

The evidence shows that Ecology was the subdivider and developer of Rainbow, a residential subdivision. Pursuant to a County ordinance and State statute concerning subdivisions and approval of plats relating thereto, Ecology entered into a contract with the County on May 9, 1973, in which it agreed to construct the public streets and drainage facilities as shown on its plats and plans of the Rainbow subdivision in accordance with the County and State standards. The contract provided that Ecology would complete the public improvements by May 9, 1976. Ecology also executed a bond on May 9, 1973, as principal, with Republic as surety and the County as obligee, in the amount of $172,000 guaranteeing the performance of its contract with the County.

On March 1, 1974, Ecology obtained a construction loan from Rust which was secured by a deed of trust on certain lots within the Rainbow subdivision. In August 1974, Rust made an additional loan to Ecology in an attempt to shore up what appeared to be problems with cost overruns which were preventing the completion of residences and public improvements in the subdivision.

In October 1974, a county public utility inspector was assigned to the subdivision to make necessary inspections. He testified that "there was very little activity" at the job site at that time; that there were no approved plans present at the construction site and there did not appear to be adequate supervision for construction of the streets and drainage facilities; that in the early months of 1975, the level of activity within the subdivision had deteriorated to the point where work had come to a complete halt on both the public and non-public improvements; that during this period of time, electricity and telephone service for the job headquarters had been cut off; and that it was necessary to issue notices to Ecology for its violation of the siltation and erosion control requirements, which it never remedied.

In the meantime, Ecology had defaulted on the payments of its loans to Rust and a foreclosure sale was held on April 2, 1975. Rust was the only bidder on the property. Eight of the lots were

improved in various stages of construction and nine were unimproved. Four houses in the subdivision had been completed and were occupied notwithstanding the fact that the streets were surfaced with gravel only, and drainage facilities were practically nonexistent.

At the time of the foreclosure, street improvements were 60 percent complete. After the foreclosure sale, an official of Ecology told the county's public utility inspector that "the street work [was] what did them in." Ecology made no attempt whatsoever to complete any public improvements after the foreclosure. It took the position that it was divested of control over the work to be performed in the areas it had dedicated to public use.

Relying on the complete lack of activity on the part of Ecology with respect to the public improvements within the subdivision, the abandonment of the job site, and the deteriorating conditions at the site, the officials of the County concluded that Ecology had no intention of performing its obligations under its contract. So on June 25, 1975, the County filed this action against Ecology and Republic on the performance bond.

After obtaining title to the lots sold at the foreclosure sale, Rust applied for permits to complete the work on the houses in order to minimize its loss. The County refused to issue the permits to Rust unless it agreed to complete the street and drainage improvements within the subdivision in accordance with the standards stipulated in the county's contract with Ecology. Three months after the County instituted this action against Ecology and Republic to recover on the performance bond, the County issued permits to Rust conditioned upon its completion of the street and drainage work in the subdivision. The County also assigned to Rust any money received by it in the pending action against Ecology and Republic, not to exceed the amount actually spent by Rust. Rust completed the street and drainage facilities in accordance with the requirements in Ecology's contract with the County at a cost of $171,725.03, which all the parties to this action stipulated was reasonable. At no time did Ecology or Republic perform, or offer to perform, the work after the foreclosure sale.

The trial court, in sustaining Ecology's and Republic's motions to strike plaintiff's evidence, held (1) that the County had not made out a prima facie case with respect to the question of anticipatory breach of contract; and (2) that the assignment to Rust was invalid.

The court further held that the surety bond was "an indemnifying bond and was not a penal or forfeiture bond."

The County contends the trial court erred in holding as a matter of law that it had not made out a *prima facie* case showing that Ecology had abandoned the Rainbow subdivision at the time this action was instituted.

In order to maintain a cause of action for an anticipatory breach of contract, it is not necessary that there be an unequivocal or positive expression of abandonment if the acts and conduct of the obligor evince an intent wholly inconsistent with the intention to perform its contract. *Roehm* v. *Horst*, 178 U.S. 1, 8 (1900).

Under the law in Virginia, the abandonment of a contract will give rise to an action for anticipatory breach. We said in *Mut. R. Fund Ass'n* v. *Taylor*, 99 Va. 208, 37 S.E. 854 (1901) that:
"[W]hen one party to a contract has entirely abandoned it, or has absolutely refused to perform it, the other party may elect to sue on it without waiting for the time of performance to arrive." 99 Va. at 213, 37 S.E. at 855-56.

Whether there has been an abandonment of a public works contract depends on the particular facts and circumstances of each case. 13 E. McQuillin, Municipal Corporations, § 37.144 (3d ed. Rev. 1971).

Generally, whether the repudiation of a contract is sufficiently positive or unequivocal to give rise to a cause of action for anticipatory breach is a factual question for the jury's determination. *Palmiero* v. *Spada Distributing Company*, 217 F.2d 561, 565 (9th Cir. 1954).

In the present case, there was ample evidence from which the jury could have reasonably concluded that Ecology had abandoned its contract, because it had neither the intention nor ability to complete the public improvements. There had been no work on the site after January 1975. Electrical and telephone services had been discontinued at the office site. Ecology's stated position was that because of the foreclosure on April 2, 1975, they no longer had control over the dedicated rights of way. After the foreclosure, one of the principals of Ecology made the statement that they had been "done in" by the cost of the road construction. Ecology made no effort to alleviate any immediate deficiencies on

the site, even after repeated warnings from the County's inspector, and showed no concern for the damage occurring as a result of the deficiencies. Hence, we hold that it was error to strike the County's evidence and enter summary judgment for Ecology and Republic.

We do not agree with the trial court's holding that the County's agreement with Rust to pay it any money that it may receive in the present proceeding, not to exceed the amount expended by Rust in completing the public improvements, was an invalid assignment.

Although we have not ruled on the precise issue presented, we think the rule adopted in several other jurisdictions that a County or "municipality may assign its rights under a bond where the assignment is for the purpose of obtaining a performance guaranteed by the bond and upon showing that the improvements have been made" is a sound rule. *Clearwater Associates* v. *F. H. Bridge & Son, Contractors*, 144 N. J. Super. 223, 229, 365 A.2d 200, 204 (1976); *County of Will* v. *Woodhill Enterprises, Inc.*, 4 Ill. App. 3d 68, 74, 75, 274 N.E.2d 476, 481-82 (1971).

The only case cited and relied upon by Ecology and Republic in support of their positions that the assignment was invalid is *Morro Palisades Co.* v. *Hartford Acc. & Indem. Co.*, 52 Cal. 2d 397, 340 P.2d 628 (1959). That case was distinguished in *Clearwater, supra,* at 144 N. J. Super. 226-28, 365 A.2d 202-04, and in *County of Will, supra,* at 4 Ill. App. 3d 75, 274 N.E.2d 481-82. It was pointed out in both of those cases that the assignment in *Morro* was not made to secure the public improvements in the subdivision roads covered by the bond, but was for the sole benefit of the assignee who was the owner of property adjacent to the subdivision, and was intended to relieve the public body of its obligations and duties under the law. There is nothing in *Morro* even suggesting that the improvements had been made or would ever be made.

The sole purpose for requiring Ecology to give a bond with surety was to provide a means by which the County could insure completion of the public improvements in the subdivision which Ecology agreed to undertake in its contract with the County. The assignment to Rust was for the purpose of obtaining performance guaranteed by the bond. Since Rust performed the work that the bond guaranteed, we perceive no reason for finding that the assignment was invalid.

■ The County contends the trial court erred in holding that the bond was an indemnification bond, rather than a penal or forfeiture bond which fixed the face amount of the bond as the appropriate measure of damages. Because our holdings on the first two issues require a reversal and remand, and the nature of the bond will be an issue on retrial, it is appropriate that we decide the question presented by this contention.

The surety bond provided, in pertinent part, as follows:
"[T]he Principal, and . . . Surety, are . . . firmly bound unto the Board of Supervisors of Fairfax County, . . . in the full and just sum of . . . $172,000.00 . . . .

". . .[B]oth Principal and Surety desire to guarantee to the Obligee, performance of . . . the . . . agreement [between Ecology and the County].

". . .[T]he condition of this obligation and bond is such that if the Principal and/or Surety shall perform all of the provisions of the foregoing agreement which is incorporated herein by this reference, then the obligation of this bond is void and of no effect; otherwise, it is to remain in full force and effect.

"Provided, that in no event shall the liability to the surety hereunder exceed the penal sum of this bond. . . ."

The County argues that the weight of authority is that when a bond is given to a public body, as a condition of license or other privilege, or when it is conditioned upon compliance with the law, the full penalty of the bond may be recovered as in the nature of liquidated damages for the breach when damages may not be readily ascertained. *State* v. *Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968); *Montgomery County* v. *Phoenix Ins. Co.*, 232 Md. 58, 192 A.2d 111 (1963); *Genesee County Board of Road Com'rs.* v. *N. American Development Co.*, 369 Mich. 229, 119 N.W.2d 593 (1963); *Salem* v. *Anson*, 40 Or. 339, 67 P. 190 (1902).

On the other hand, Ecology and Republic contend that a bond given to a county or municipality by a subdivider to guarantee the construction and completion of public improvements in a subdivision is a performance or indemnification bond, and that the County's damages are the reasonable costs of completing the public improvements not to exceed the amount of the bond. This principle finds support in *Pacific City* v. *Sherwood, Pacific, Inc.*, 17

Wash. App. 790, 796, 567 P.2d 642, 648-49 (1977); *Town of Stone-ham* v. *Savelo*, 341 Mass. 456, 459, 170 N.E.2d 417, 419 (1960); *Evola* v. *Wendt Construction Co.*, 170 Cal. App. 2d 21, 26, 338 P.2d 498, 501 (1959); Anderson, American Law of Zoning, (2d ed.) § 23.46 at 159 (1977).

Ecology and Republic also argue that the state's enabling statute, Code § 15.1-466 (Repl. Vol. 1973), and the County's ordinance show legislative intent that the bond required was a performance or indemnity bond and not a penal or forfeiture bond.

Whether the bond in question is a penal bond or an indemnifying bond is to be determined by the language of the state enabling statute, the county ordinance, and the bond itself.

Virginia Code § 15.1-466 (Repl. Vol. 1973), authorizes a county or municipality to adopt an ordinance requiring a subdivider, who is seeking approval of a subdivision plat, to execute a bond in an amount sufficient for and conditioned upon the construction of the public improvements in the subdivision.

Section 23-12 of the County ordinance provides, so far as pertinent here, that a subdivider shall construct in the subdivision such physical improvements as required by the County and "execute a bond with surety in the amount of the estimated cost of the physical improvements as determined by the Director."

One of the main purposes of the enabling act and the County's ordinance is to require a subdivider to lay out and construct streets and other improvements in accordance with the state and county standards before the maintenance is taken over by a public agency and to relieve the public to this extent of the burden that would otherwise exist.

There is nothing in the language of the bond, the state statutes, or the county ordinance to suggest that the bond was intended as a punishment for non-performance. On the contrary, the bond was intended to be an amount sufficient to pay construction costs, and upon failure of completion of the public improvements by the subdivider, the bond provided funds to the extent of the amount of the bond to cover the cost of completion of the improvements as then remained.

The fact that reference is made in the bond that the surety would be liable to no more than the "penal" amount of the bond

does not make it a penal bond instead of a performance or indemnification bond. We do not construe the word penal as used here to mean that the bond was a penal or forfeiture bond in light of other language found therein.

Thus, we are of opinion that the bond given by Ecology was a performance or indemnification bond and not a penal bond.

The judgment of the court below is reversed and the case is remanded for a new trial.

*Reversed and remanded.*