941 F.2d 1206
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ALFRED C. CORDON, P.C., Plaintiff-Appellee,
v.
URBAN TELECOMMUNICATIONS CORPORATION, Defendant-Appellant.
ALFRED C. CORDON, P.C., Plaintiff-Appellant,
v.
URBAN TELECOMMUNICATIONS CORPORATION, Defendant-Appellee.
 No. 90-2464.
 No. 90-2470.
 Argued: May 9, 1991
Decided: August 23, 1991
 
 UNITED STATES COURT OF APPEALS
FOURTH CIRCUIT
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.
 ARGUED: Dennis Jeffrey Whittlesey, COLLIER, SHANNON & SCOTT, Washington, D.C., for Appellant. Michael Joseph McManus, JACKSON & CAMPBELL, P.C., Washington, D.C., for Appellee. ON BRIEF: Jeffrey L. Poston, Joseph S. Gerbasi, COLLIER, SHANNON & SCOTT, Washington, D.C.; J. Thomas Burch, Jr., Alexandria, Virginia, for Appellant.
 Before MURNAGHAN and SPROUSE, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Urban Telecommunications Corporation ("Urban") appeals from the district court's judgment awarding $45,722 to its former attorney Alfred C. Cordon, P.C. ("Cordon"), on the latter's claim of anticipatory breach of a contract for attorney's fees accumulated in connection with Urban's application to the Federal Communications Commission ("FCC") for a television station construction permit. In a cross-appeal, Cordon challenges the district court's calculation of fees and its denial of prejudgment interest. We affirm.
 
 
 2
 * By letter of October 1, 1979, Alfred C. Cordon[1] agreed to represent Urban in its application to the FCC for a construction permit to build and operate a television station (Channel 14) in Arlington, Virginia. The letter, detailing the parties' previous oral agreement, set forth the fee arrangements as "$100 per hour for senior attorneys, and $50 for a junior attorney, plus out-of-pocket expenses for telephone, duplication and similar expenses."
 
 
 3
 Cordon's firm represented Urban from October 1, 1979, through June 1, 1982, when Cordon, citing Urban's delinquency in paying over $75,000 in fees, withdrew as counsel. While Urban had been sent monthly invoices, as of Cordon's withdrawal, it had paid only $250. After retaining new counsel, Urban was adjudged financially unqualified by an administrative law judge and was denied the permit.
 
 
 4
 In early 1983, after retaining yet another attorney, James Edmundson, Urban appealed the permit denial to the FCC review board. In preparation for that appeal, Edmundson requested a letter from Cordon deferring payment of attorney's fees. In his letter of November 7, 1983, Cordon agreed to such deferral until six months after Urban commenced operation of Channel 14 if the permit were granted. According to the letter, the purpose of the deferral was to assure that sufficient funds would be available to cover construction and initial operating costs. In 1985, the FCC approved the application for a permit and after an unsuccessful federal appeal by an aggrieved applicant, the issuance of the permit became final in March 1988. Subsequently, without having broken ground for construction of the station, Urban entered into negotiations with the Home Shopping Network ("HSN") and applied to the FCC for assignment of its construction permit to Urban Broadcasting Corporation ("UBC"), an HSN affiliate.[2]
 
 
 5
 On July 24, 1989, Cordon filed this diversity action[3] in the district court for the Eastern District of Virginia seeking $73,144.30 plus costs and interest under the doctrines of anticipatory breach of contract, account stated, and quantum meruit.[4] The district court found an anticipatory breach of the contract by Urban and concluded that Cordon was entitled to legal fees, but not prejudgment interest. The court referred the matter to a magistrate judge for an accounting of the amount and a determination of the reasonableness of the amount of attorney's fees claimed. The district court agreed with the recommendation of the magistrate judge and entered judgment in favor of Cordon in the amount of $45,722.
 
 
 6
 On appeal, Urban contends that the court erred in both its finding that there was an anticipatory breach of the contract and the calculation of the legal fees. In the latter respect it argues that the court erred by including fees for October 1, 1979, through December 31, 1980, a period for which there were no records available accounting for time spent by the firm and by not accepting as conclusive the estimated reasonable fee provided by attorney Edmundson. Cordon, on cross-appeal, challenges the district court's calculation of the legal fees. He contends the court erred in not awarding $75,360.65, pursuant to his account stated claim and, alternatively, by applying the junior attorney billing rate to the services of a law firm associate. He also contests the denial of prejudgment interest.
 
 II.Anticipatory Breach
 
 7
 The rule in Virginia is that if one party to a contract declares in advance that he will not perform at the time set for performance, the other party has an action for breach of contract. See Board of Supervisors v. Ecology One, Inc., 219 Va. 29, 33, 245 S.E.2d 425, 428 (1978); Mutual R. Fund Ass'n v. Taylor, 99 Va. 208, 213, 37 S.E. 854, 855-56 (1901); see also City of Fairfax v. Washington Metro. Area Transit Auth., 582 F.2d 1321, 1325 (4th Cir. 1978) cert. denied, 440 U.S. 914 (1979). The repudiation must be clear and unequivocal and must cover the entire performance of the contract. See Link v. Weizenbaum, 229 Va. 201, 203, 326 S.E.2d 667, 668 (1985); Ecology One, 219 Va. at 33, 245 S.E.2d at 428. The repudiation, however, need not be expressed verbally. See City of Fairfax, 582 F.2d at 1327 (the repudiation "may rest on a defendant's conduct evidencing a clear intention to 'refuse performance in the future: such as placing himself' in a position in which performance ... would be impossible"). Here, pursuant to the November 7 letter, the attorney's fees were payable six months after operation commenced. By entering into negotiations with HSN and applying to the FCC for the transfer of its construction permit without which it could not operate Channel 14, Urban rendered itself apparently unable to perform. See Restatement (Second) of Contracts § 250 (1981). Urban argues, however, that not only are no attorney's fees presently due but the fees have been provided for in the HSN negotiations. This argument strikes us as totally lacking in merit and we affirm the district court's finding that Urban anticipatorily breached the agreement to pay Cordon attorney's fees.
 
 III.Fee Calculation
 
 8
 Although both parties contest the amount of the attorney's fee award, we find no error in the calculation. This court held in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.) cert. denied, 439 U.S. 934 (1978), that the reasonableness of attorney's fees is to be determined by application of the factors enumerated by the Fifth Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).[5] Here, both the magistrate judge and the district court in its de novo review applied the legal fee rates for senior attorneys and junior attorneys set out in Cordon's letter of October 1, 1979, and considered the customary practices of the community to set the undesignated billing rate for the services of law clerks at $25 per hour. They applied these figures to the amount of hours claimed, including hours not documented by time records, for a total fee of $44,094.22 plus $1,627.78 in disbursements.
 
 
 9
 On cross-appeal, Cordon urges that the court abused its discretion in failing to enter judgment in the full amount of the account proven at trial, $75,360.65, pursuant to his account stated claim. In light of mischarges reflected in the claimed sum, we find no such abuse. Cordon further contests the application of the $50 per hour rate for junior attorneys to the services of Dennis Kelly, an associate at the law firm, instead of the $100 per hour rate the October 1 letter reserved for senior attorneys. We are unpersuaded by Cordon's argument that the trial court must accept the uncontradicted evidence that the understanding from the outset was that Kelly was to be billed out at $100 per hour. Both the magistrate judge and the district court found that Kelly, who was not admitted to practice law until 1979, was a junior attorney at the time services were rendered. Kelly had less than three years experience and had not been admitted to the bar but for a short period. Even if, as Cordon contends, communications law is an easily acquired expertise and Kelly's performance was excellent, contending that he was a senior attorney is simply unreasonable.
 
 
 10
 Urban, on the other hand, argues that the court erred in allowing recovery of fees for services rendered from October 1, 1979, through December 31, 1980, the period for which there were no time records in evidence. Cordon testified at trial that the time sheets had been lost in an office relocation subsequent to his withdrawal as counsel. However, there were bills and ledger sheets reflecting the amounts claimed for that period. Both the magistrate judge and the trial court calculated the hours worked by the senior attorney, junior attorney, and law clerk based upon the percentage of the time worked during the period January 1981 through May 1982 for which there were time sheets to reach a reasonable figure. We find no error. Further, in light of the trial court's application of the factors set out in Barber, we reject Urban's argument that the trial court should have accepted as conclusive attorney Edmundson's $5,000 fee estimate for the initial 18 month period.
 
 IV.Prejudgment Interest
 
 11
 Finally, we consider the court's denial of prejudgment interest to Cordon. An award of prejudgment interest is compensatory in nature "and is designed to compensate the plaintiff who has been without deserved relief for an extended period of time." Gill v. Rollins Protective Serv. Co., 836 F.2d 194, 198 (4th Cir. 1987) (citation omitted). See also West Virginia v. United States, 479 U.S. 305, 310 n.2 (1987); Marks v. Sanzo, 231 Va. 350, 356, 345 S.E.2d 263, 267 (1986); Va. Code Ann. § 8.01-382 (1984). We are persuaded, however, that neither the rule nor the policy behind it bears on this case. While considerable time has elapsed since the termination of Cordon's legal services, he formally agreed to defer payment in 1983. In that contract-like letter no mention was made of interest.
 
 
 12
 For these reasons the district court's judgment is affirmed.
 
 AFFIRMED
 
 
 [1]
 The agreement was entered by Cordon, acting on behalf of Cordon & Jacob, the predecessor law firm to Alfred C. Cordon, P.C
 
 
 [2]
 Subsequent to the filing of this suit, the FCC approved the assignment, in February 1990
 
 
 [3]
 Cordon is based in Washington, D.C., and Urban is a Virginia corporation
 
 
 [4]
 Cordon's initial complaint was filed on July 24, 1989, alleging breach of contract, account stated, and quantum meruit. After Urban filed for dismissal of the action as barred by the relevant statute of limitations or, alternatively, due to prematurity, the parties stipulated to the filing of an Amended Complaint by Cordon emphasizing the anticipatory nature of the claimed breach. Urban's subsequent motions to dismiss and for summary judgment were denied
 
 
 [5]
 The factors identified by this Court are (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases. Barber, 577 F.2d at 226 n.28