PRESENT:  Goodwyn, C.J., Powell, Kelsey, McCullough, Chafin, and Russell, JJ., and Millette, S.J.

UNDER WILD SKIES, INC.

                                          OPINION BY
v.  Record No. 240683                  JUSTICE CLEO E. POWELL
                                          MAY 29, 2025
NATIONAL RIFLE ASSOCIATION OF AMERICA

FROM THE COURT OF APPEALS OF VIRGINIA

Under Wild Skies, Inc. ("UWS") appeals the judgment of the Court of Appeals, which affirmed the trial court's refusal to give proffered Jury Instruction 21 on the doctrine of adequate assurance.  For the reasons that follow, we affirm.

## I.  BACKGROUND

For twenty-six years, UWS owned a television show called Under Wild Skies.  Anthony Makris, the President and sole shareholder of UWS, hosted the show.  In the 1990s, Makris; Wayne LaPierre, the CEO and Executive Vice President of the National Rifle Association ("NRA"); and others created the show to expand the NRA's reach within the hunting community.  The NRA was the sole sponsor of the show.

In January 2018, UWS and the NRA entered into a new Sponsorship Agreement and Advertising Agreement (collectively, the "Agreements"), which were effective through 2025. The Agreements provided that UWS would produce 13 episodes per year in exchange for the NRA making certain payments for advertisements on and sponsorship of the show.  The NRA was required to make equal payments on March 1, May 1, July 1, and September 1 of each year.

On July 31, 2019, as part of an internal review of all vendor agreements,[1] the NRA sent a letter to UWS requesting certain information regarding the television show, including the platforms on which it aired; episode airtime; and viewership, marketing, and sponsorship data. The letter requested that the information be provided by August 5, 2019. Makris alerted the NRA that he was currently in Uganda filming an episode of the show, but he nevertheless coordinated with the production company to gather the requested information.

On August 2, 2019, UWS sent a letter through its attorney to the NRA (the "Dycio Letter"). UWS initially resisted providing the requested information, noting that it was not contractually obligated to do so. UWS stated that the request was unprecedented and could "be interpreted as anticipatory breach of the agreement between the parties." In closing, UWS stated, "If it is in fact that [sic] the NRA's desire to terminate the 26-year relationship (with 6 years remaining on the validly executed agreement) then a negotiated buy out of that remainder is the only way to avoid protracted litigation[.]"

UWS ultimately provided the requested information on August 5, 2019. However, the NRA never responded to the Dycio Letter or communicated whether UWS sufficiently responded to the document request.

On September 1, 2019, the NRA failed to make payment pursuant to the Agreements. During the usual course of business between the parties, the NRA would communicate if it would be late on a payment. However, the NRA did not communicate with UWS before the September 1 payment date. On September 11, 2019, UWS filed suit against the NRA for breach of contract and anticipatory breach.

---

[1] At trial, NRA representatives testified that the internal review was sparked by a potential compliance investigation by the New York Attorney General. LaPierre testified that the NRA requested similar metrics from other television programs during this period.

At trial, UWS offered Jury Instruction 21 on the doctrine of adequate assurance in support of its anticipatory breach claims. The jury instruction provided:

> Where reasonable grounds arise to believe that one party to a contract will commit a breach by non-performance that would:
>
> > (1) Of itself constitute a repudiation of the contract, or
> >
> > (2) So substantially impair the value of the contract to the other party at the time of the breach that it is just in the circumstances to allow him to recover damages based on all his remaining rights to performance
>
> The other party may demand adequate assurance of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed exchange until he receives such assurance.
>
> The non-breaching [party] may treat as a repudiation the breaching party's failure to provide within a reasonable time such assurance of due performance as is adequate in the circumstances of the particular case.

UWS contended that the instruction was based on the Restatement (Second) of Contracts § 251 and was supported by the Dycio Letter. The NRA argued that the Restatement is not consistent with Virginia law, and the instruction would cause the trial court to comment on the evidence. The trial court rejected the instruction because it would "caus[e] the [c]ourt to comment on the evidence."[2]

---

[2] The trial court instructed the jury on anticipatory breach and repudiation. Jury Instruction 15 states:

> When one party to a contract has entirely abandoned it, or has absolutely refused to perform it, the other party may elect to sue on it without waiting for the time of performance to arrive. Whether there has been an abandonment of a contract depends on the particular facts and circumstances of each case. It is not necessary that there be an unequivocal or positive expression of abandonment if the facts and conduct of the obligor evince an

The jury returned a verdict for UWS on Counts I and II for breach of the Agreements and a verdict for the NRA on Counts III and IV for anticipatory breach of the Agreements. UWS moved to set aside the verdict in favor of the NRA on Counts III and IV, based solely on the trial court's refusal of Jury Instruction 21. The trial court denied the motion, concluding that UWS failed to raise any new matters that were not already addressed during trial and ruled upon by the trial court.

In an unpublished opinion, the Court of Appeals affirmed the judgment of the trial court on the anticipatory breach claims, concluding that the trial court did not err in refusing Jury Instruction 21 or denying UWS's motion to set aside the verdict. *Under Wild Skies, Inc. v. Nat'l Rifle Ass'n of America*, No. 1956-22-4, 2024 Va. App. LEXIS 386, *12 (July 9, 2024). Although the Court of Appeals recognized that the doctrine of anticipatory repudiation is part of the law of contracts in Virginia, the Court of Appeals reasoned that "[i]t does not necessarily follow. . . that the doctrine of reasonable assurances[3] is also the law of this Commonwealth." *Id.* at 11. The Court of Appeals declined to extend the law of contracts because no Virginia authorities have recognized the doctrine of adequate assurance. *Id.* at 12.

---

<span style="padding-left: 12em;">intent wholly inconsistent with the intention to perform its contract.</span>
Jury Instruction C-21 states, "Repudiation entails a statement or voluntary affirmative act indicating that the promisor will commit a breach when performance becomes due."

[3] The phrase "reasonable assurance" and "adequate assurance" are used interchangeably by the parties and our sister courts. (*See, e.g.,* Opening Br. at 13, n1; Br. of Appellee at 15-16). *See, e.g. Conference Center, Ltd. v. TRC – The Research Corp.*, 455 A.2d 857 (Conn. 1983) (using "adequate assurance"). *Land O'Lakes, Inc. v.* Hanig, 610 N.W. 2d 518 (Iowa 2000) (using both "reasonable assurance" and "adequate assurance"); *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 705 N.E. 2d 656 (N.Y. Ct. App. 1998) (using "adequate assurance"). For the purposes of this appeal, we have used the term "adequate assurance."

## II. ANALYSIS

UWS argues that the Court of Appeals erred in failing to recognize the doctrine of adequate assurance because it is rooted in Virginia's common law doctrines of anticipatory breach and repudiation. UWS contends that the trial court committed reversible error by refusing Jury Instruction 21 because it was an accurate statement of the law and supported by more than a scintilla of evidence, including the Dycio Letter, the NRA's lack of response, and the NRA's failure to make payment. The NRA argues that the Court of Appeals correctly affirmed the trial court's denial of Jury Instruction 21 because it was not an accurate statement of Virginia law and was not supported by a scintilla of evidence.

We conclude that Jury Instruction 21 is not an accurate statement of Virginia law.

### A. Standard of review

A litigant is entitled to jury instructions that support their theory of the case if the instruction is an accurate statement of the law and is supported by more than a scintilla of evidence. *Emergency Physicians of Tidewater, PLC v. Hanger*, 303 Va. 77, 88 (2024) (citing *Schlimmer v. Poverty Hunt Club*, 268 Va. 74, 78 (2004)). The Court reviews a trial court's refusal to grant a jury instruction under an abuse of discretion standard. However, the Court reviews de novo whether a jury instruction is a correct statement of the law. *Harman v. Honeywell Int'l, Inc.*, 299 Va. 84, 103 (2014). In applying this standard of review, the Court views the evidence in the light most favorable to the proponent of the instruction. *Id.*

### B. Overview of relevant doctrines

#### i. Repudiation and anticipatory breach

The law of repudiation and anticipatory breach is well-established in Virginia. Repudiation occurs before performance is due. *Bennett v. Sage Payment Solutions, Inc.*, 282 Va.

49, 56 (2011) (collecting cases). In the context of a continuous performance contract, a party may partially perform and then abandon their future contractual obligations. *Id.* at 58. "The abandonment of a contract will give rise to a claim for anticipatory breach." *Board of Supervisors v. Ecology One, Inc.,* 219 Va. 29, 33 (1978).

Whether there has been a repudiation depends on the facts and circumstances of each case. *Id.* For repudiation to constitute a breach of contract, "the repudiation must be clear, absolute, unequivocal, and must cover the entire performance of the contract." *Bennett*, 292 Va. at 59 (citing *Vahabzadah v. Mooney*, 241 Va. 47, 50 (1991)).[4] *See also Ecology One*, 219 Va. at 33 ("[I]t is not necessary that there be an unequivocal or positive expression of abandonment if the acts and conduct of the obligor evince an intent wholly inconsistent with the intention to perform its contract."). Whether the repudiation is "sufficiently positive or unequivocal to give rise to a cause of action for anticipatory breach" is a question of fact for the jury. *Ecology One*, 219 Va. at 33 (citing *Palmiero v. Spada Distributing Co.*, 217 F.2d 561, 565 (9th Cir. 1954)).

The party to whom performance is owed traditionally has three options: (1) rescind the contract, (2) elect to file suit immediately, or (3) wait until performance is due and then elect to file suit. *Simpson v. Scott*, 189 Va. 392, 398 (1949).

ii. Doctrine of adequate assurance

The doctrine of adequate assurance is not a common law doctrine. Rather, it originated in the Uniform Commercial Code ("U.C.C."), which is limited to contracts for the sale of goods. *See* Gregory S. Crespi, *The Adequate Assurances Doctrine after U.C.C. 2-609: A Test of the*

---

[4] In *Bennett*, the Court affirmatively cited the definition of repudiation from Restatement (Second) of Contracts § 250(b) to suggest that "repudiation entails a statement or 'voluntary affirmative act' indicating that the promisor 'will commit a breach' when performance becomes due." 282 Va. at 57, 59.

6

*Efficiency of the Common Law*, 38 Vill. L. Rev. 179, 184 (1993); R.J. Robertson, Jr., *The Right to Demand Adequate Assurance of Due Performance: Uniform Commercial Code Section 2-609 and Restatement (Second) of Contracts Section 251*, 38 Drake L. Rev. 305, 311 (1988) (suggesting that there is only one pre-U.C.C. case that "recognized an insecure promisee's right to withhold performance upon the discovery of reasonable grounds for insecurity, absent a contractual provision to that effect"). U.C.C. § 2-609 was drafted to remedy the perceived "dilemma" posed by the common law doctrine of anticipatory repudiation for when the apparently breaching party's action are less certain or equivocal. *See Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 705 N.E.2d 656, 659 (N.Y. Ct. App. 1998). One legal scholar has explained this "dilemma":

> If the promisee regards the apparent repudiation as an anticipatory repudiation, terminates his or her own performance and sues for breach, the promisee is placed in jeopardy of being found to have breached if the court determines that the apparent repudiation was not sufficiently clear or unequivocal to constitute an anticipatory repudiation justifying nonperformance. If, on the other hand, the promisee continues to perform after perceiving the apparent repudiation, and it is subsequently determined that an anticipatory repudiation took place, the promisee may be denied recovery for post-repudiation expenditures because of his or her failure to avoid those expenses as part of a reasonable effort to mitigate damages after the repudiation.

Crespi, *supra*, at 183. U.C.C. § 2-609(1) provides, "when reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return." If the apparently breaching party does not respond to the written demand for assurance within 30 days, the other party may treat it as a repudiation. U.C.C. § 2-609(4).

7

Recognizing that the "dilemma" is not unique to contracts for the sale of goods and in light of the effectiveness of U.C.C. § 2-609, the American Law Institute incorporated the doctrine of adequate assurance to apply to all contracts in the Restatement (Second) of Contracts. Section 251 provides:

> (1) Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would itself give the obligee a claim for damages for total breach under § 243, the obligee may demand adequate assurance of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed exchange until he receives such performance.
> (2) The obligee may treat as a repudiation the obligor's failure to provide within a reasonable time such assurance of due performance as is adequate in the circumstances of a particular case.

Restatement (Second) of Contracts, § 251. Other states have slowly adopted Restatement § 251 as part of their common law, often in limited circumstances. *See* Crespi, *supra*, at 191-92 and nn. 49-52; Robertson, *supra*, at 352 (collecting cases). *See, e.g., McNeal v. Lebel*, 953 A.2d 396 (N.H. 2008) (applying § 251 to a construction contract dispute); *Norcon*, 705 N.E.2d 656 (adopting § 251 in long-term commercial contract disputes between corporate entities); *Conference Ctr., Ltd. v. TRC – The Research Group,* 455 A.2d 857 (Conn. 1983) (adopting § 251 in constructive eviction cases); *Bitzes v. Sunset Oaks*, 649 P.2d 66 (Utah 1982) (affirmatively citing § 251); *L.E. Spitzer Co. v. Barron*, 581 P.2d 213 (Alaska 1978) (affirmatively citing a previous draft of what was adopted as § 251). *But see Mollohan v. Black Rock Contracting*, 235 S.E.2d 813 (W.Va. 1977) (declining to adopt a previous draft of what was adopted as § 251 as common law but noting that failure to respond to demand for assurance may be evidence of repudiation to present to a jury).

C. The doctrine of adequate assurance is not part of Virginia's common law.

UWS urges the Court to follow the lead of other state courts and recognize the right to demand adequate assurance as set forth in Restatement (Second) of Contracts § 251 as part of Virginia's common law. Respectfully, we decline the invitation to do so.

As set forth above, the doctrine of adequate assurance is a modern innovation by the American Law Institute, not a common law doctrine. To date, no Virginia appellate court has recognized the right to demand adequate assurance under Restatement § 251. *See Under Wild Skies, Inc.*, 2024 Va. App. LEXIS at *12. The General Assembly has adopted the doctrine of adequate assurance in limited circumstances, but it has stopped short of adopting the doctrine more broadly. *See* Code § 8.2-609 (contracts for sales of goods); § 8.2A-401 (commercial leases). The decision to adopt a new doctrine applicable to all contractual disputes is a policy decision that is more appropriately left to the legislature. *See Bell v. Hudgins*, 232 Va. 491, 494-95 (1987). Accordingly, we decline to recognize the doctrine of adequate assurance as applicable to this contract dispute.

D. The trial court did not err in refusing Jury Instruction 21

It follows that the trial court did not err in refusing Jury Instruction 21 because it was not an accurate statement of Virginia law regarding repudiation. As set forth above, to constitute a breach of contract, repudiation "must be clear, absolute, unequivocal, and must cover the entire performance of the contract." *Bennett*, 282 Va. at 59 (citing *Vahabzadeh*, 241 Va. at 50). The Court has defined repudiation as a statement or voluntary affirmative act indicating that the promisor will commit a breach when performance is due. *Id.* (citing Restatement (Second) of Contracts § 250). By contrast, Jury Instruction 21 defines repudiation as "the breaching party's failure to provide within a reasonable time such assurance of due performance as is adequate in

9

the circumstances of the particular case." The proffered instruction expands the definition of repudiation beyond what is currently recognized in Virginia law. Therefore, the trial court did not commit reversible error by refusing Jury Instruction 21. *See Bon Secours-Depaul Med. Ctr., Inc. v. Rogakos-Russell*, 304 Va. __, __; 910 S.E.2d 16, 24 (2025) (noting that, in a civil case, where a party proffers a jury instruction that is not an accurate statement of the law, "the trial court is not required to correct or amend the instruction rather than refusing to grant it") (citations omitted).[5]

## III. CONCLUSION

For the reasons stated herein, we affirm the judgment of the Court of Appeals.

*Affirmed.*

---

[5] Here, however, the trial court drafted its own instruction defining repudiation as "a statement or voluntary affirmative act indicating that the promisor will commit a breach when performance becomes due.". UWS did not object to this instruction.