**B. B. & S. CONSTRUCTION CO., INC., and Jerald C. Briske, Appellants,**

v.

**James T. STONE, Appellee.**

No. 2029.

Supreme Court of Alaska.

May 12, 1975.

As Amended July 16, 1975.

Stan B. Stanfill and A. Robert Hahn, Jr., of Hahn, Jewell & Stanfill, Anchorage, for appellants.

Mark C. Rowland, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and BOOCHEVER, JJ.

## OPINION

CONNOR, Justice.

### I.

This contractual dispute between James Stone, doing business as S. S. Construction, and Jerald Briske, doing business as B. B. & S. Construction, arose over an alleged agreement to share the profits on successful construction contract jobs.

Sometime during the winter of 1969–70, Stone and Briske discussed the possibility of working together on bids for construction projects. These discussions culminated in an oral agreement in late April or early May, 1970, whereby Stone would quit his job and start working full time with Briske. If the bids were successful, the profits would be split evenly between the two parties. Under this arrangement, Stone participated with Briske on several unsuccessful bids. However, they did make a successful bid for a water distribution and sewage project in Minto, Alaska.

In accordance with their understanding, the parties predetermined equipment rentals as well as other expenses. These figures were written on bid estimate sheets, which were subsequently lost by Briske. For the Minto project, Stone prepared the bid and Briske checked the figures. As for the construction bonding, Briske was to be credited with the actual cost of the bond which did not include a premium.[1] Under the oral agreement, both parties were obligated to work on this project. Briske supplied his company, the bonding capacity, and the financial backing, while Stone contributed his experience. In determining profits, a rental rate for Briske's equipment was to be credited as a job expense.

The Minto project was nearly finished by November, 1970. Some minor overruns were completed the following spring. The total contract price, including the overruns, amounted to $396,399.34, which was received by Briske's corporation.

While working on the Minto project the two parties negotiated a contract for a runway improvement. Although Stone did not work on the runway improvement, he received one-half of the proceeds.

Stone and Briske entered into another business transaction while the Minto project was progressing. In anticipation of Minto profits, the parties decided to enter into a partnership, sometime in August, 1970. This partnership, Pacific Investments, purchased real property for a down payment of $25,000. The money was furnished by Briske from his resources.

Before the Minto project was fully completed, however, both parties had a falling out. When they could no longer resolve their differences, Stone demanded an accounting of the profits on the Minto project. Since Stone was under the impression that their initial agreement was still operative, he wanted the profits divided equally. However, Briske suggested that because of the amount of money involved, the matter should be settled by lawyers. Subsequently Stone filed a suit in superior court, demanding an accounting pursuant to their original agreement. Briske denied that the Minto project was within the purview of the original agreement.

In addition, Briske counterclaimed, requested the dissolution of the Pacific Investments partnership, and sought an injunction to prevent Stone from interfering with the property or, in the alternative, to require that Stone pay his share of the down payment. As to this counterclaim Stone alleged that his share of the down payment should be deducted from the anticipated profits of the Minto project.

After hearing conflicting testimony concerning the relationship of the two parties and the amounts attributable to equipment rentals and other expenses, the trial court held that an agreement for mutual benefit was entered into by the parties for the Minto project. However, the court did not

1. According to Stone, there was no premium to be charged because, since Briske's equipment would be employed on the project, he would derive a larger share of the profit from the negotiated equipment rentals.

order that the profits be shared equally. Instead, the court adopted something in the nature of a quasi-contractual method of allocating the profit between Stone and Briske. The court held:

> "That the defendant Briske put up in material, cash, including bonds, payroll advance, labor and his own expertise, a percentage equivalent to 80 percent of the value of the job, and defendant is therefore entitled to keep for himself 80 percent of the gross profits figure; that plaintiff put forth only his skill and labor and expertise and is entitled to 20 percent of the gross profits."

It is apparent from the division of the profits that the court based its determination in part on the expenses incurred by each party. These same expenses were utilized to determine the overall profit on the Minto project. In arriving at the profit figure, the court relied on the undisputed expenses listed in plaintiff's exhibit #1: $145,719.43. Since the construction revenue was $373,959 [2] for the job as of November, 1970, the profit was listed as $228,239.57. Stone's share of the profit according to the court's formula is $45,647.91. From this amount the court subtracted Stone's on-the-job draws amounting to $11,835 and the $12,500 due on the Pacific Investment property, leaving a net of $21,312.91 due to Stone.

From this judgment, Briske appealed, contending that the court erred in finding an agreement between the two parties and that the court did not calculate the proper expenses in its formula to arrive at a net profit.

On September 17, 1974, we ordered the case remanded to the superior court for new findings of fact. In particular, the superior court was ordered to enter findings of fact with respect to the following matters:

(a) whether a contract existed between the parties;

(b) if a contract existed, what were its terms;

(c) if a contract existed, what items of expense were properly chargeable against the Minto project;

(d) if a contract existed, what was the basis of division of the net profit between the parties; and

(e) if a contract did not exist between the parties, whether the granting of quasi-contractual relief was appropriate. If so, what was the factual basis for granting such relief and the amount of recovery.

On December 9, 1974, the superior court judge entered amended findings of fact and conclusions of law in which he found that the parties had entered into an "oral contract and agreement." No other changes were made in the original findings of fact and conclusions of law.

Thus, we must now consider appellant's original appeal in light of the amended findings of fact and conclusions of law.

## II.

We shall consider first appellant's argument that the trial court erred in finding an oral contract between the parties whereunder there is due and owing to appellee the sum of $21,312.91.

■ Where the existence of an oral contract and the terms thereof are the points in issue and the evidence is conflicting, it is for the trier of the facts to determine whether the contract did in fact exist and, if so, the terms thereof. Nordin v. Zimmer, 373 P.2d 738, 741–42 (Alaska 1962).

---

2. Construction revenue for the total job was $396,391.30. However, as mentioned earlier, the project was not completely finished until the spring of 1971. Since Stone did not participate in this phase of the project the court only used the revenue figure attributable to the period before the temporary shutdown in November, 1970.

In this case, the court, sitting without a jury and with every opportunity to judge the credibility of all the witnesses, found the existence of an oral contract. Under Alaska Rule of Civil Procedure 52(a),[3] we are bound by this finding unless it is clearly erroneous. *See e. g.,* Larman v. Kodiak Electric Association, 514 P.2d 1275, 1278 (Alaska 1973); Palfy v. Rice, 473 P.2d 606 (Alaska 1970); Chirikoff Island Cattle Corp. v. Robinette, 372 P.2d 791, 794 (Alaska 1962); Link v. Patrick, 367 P.2d 157, 159 (Alaska 1961).

■ Much of the appellee's testimony relating to the existence of the oral contract was contradicted by evidence introduced by the appellant.[4] Under the circumstances, we have carefully examined the entire record before us, and guided by both Alaska Rule of Civil Procedure 52(a) and the well-recognized rule that an appellate court must take the view of the evidence most favorable to the prevailing party below,[5] we find here no such clear error as would require us to reverse the trial court's determination that an oral contract existed between the parties.

Before proceeding to a discussion of appellant's contention that the trial court did not properly apply the formula it devised to determine gross profit, we think it necessary to review the formula itself, i. e.,

the trial court's allocation of the gross profits, 80% to appellant and 20% to appellee.

■ Although appellee Stone failed to cross-appeal from the decision of the court with respect to the allocation of profits, we have determined that appellee's argument that the 80/20 split was contingent on the continued existence of the court's determination with respect to undisputed expenses, may be viewed as a cross-appeal if the expenditure problem is reopened.[6]

In Craig v. Hamilton, 518 P.2d 539, 542 (Kan.1974), the court declared:

". . . The agreement does not state the correlation between the right to profits and the contribution of equipment and skills or the right to profits and the contribution of $20,000.00 cash. Neither law nor custom exalts one type of contribution above another. One partner may put up skill and service as against the money or property provided by the other and be entitled to share equally in the profits of the partnership." [Citations omitted.][7]

In this case, the trial court did not find that there was an express agreement to split the profits 80% to appellant Briske and 20% to appellee Stone.

■ Thus, the trial court erred in finding that a partnership or joint venture

---

3. Alaska Rule of Civil Procedure 52(a) provides, in part, that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

4. Credibility choices are for the trier of the facts to make and his selection will generally be accepted by the reviewing court. This is so for the reason that the fact finder saw the witnesses testify, heard the inflection of their voices and observed their relative candor in answering questions. *See* United States v. Yellow Cab Co., 338 U.S. 338, 341, 70 S.Ct. 177, 94 L.Ed. 150 (1949); Green Trees Enter., Inc., v. Palm Springs Alpine Estates, Inc., 66 Cal.2d 782, 59 Cal.Rptr. 141, 427 P.2d 805, 808 (1967), reh. denied.

5. *See e. g.,* Chirikoff Island Cattle Corp. v. Robinette, 372 P.2d 791, 794 (Alaska 1962).

6. Alaska Rule of Appellate Procedure 46 provides that "[t]hese rules are designed to facili-

tate business and advance justice. They may be relaxed or dispensed with by this court where a strict adherence to them will work surprise or injustice."

Instances in which this court has relaxed the necessity for strict adherence to its appellate rules include the following: Miller v. City of Fairbanks, 509 P.2d 826, 829 (Alaska 1973); Lapham v. Town of Haines, 372 P.2d 376, 377 (Alaska 1962); Bailey v. Fairbanks Independent School District, 370 P.2d 526, 529 (Alaska 1962).

*Cf.* Everly Enterprises, Inc. v. Altman, 54 Cal.2d 761, 8 Cal.Rptr. 455, 356 P.2d 199, 202 (1960). *See generally* 9 Moore, Fed.Prac. § 204.11[4] at 940–44.

7. *Cf.* Weizer v. Commissioner of Internal Revenue, 165 F.2d 772, 777 (6th Cir. 1948); Demmert v. Demmert, 14 Alaska 425, 115 F.Supp. 430 (D.C.Alaska 1953).

existed and then allocating profits on an 80/20 basis.[8] If a partnership or joint venture existed, then, absent an express agreement to the contrary, profits should have been divided equally.[9]

Appellant's second contention is that the trial court, in computing the gross profit, failed to consider all the relevant expenses incurred by him and his company.

The court, in arriving at the expense figure, probably relied on plaintiff's exhibit # 1, which listed figures for disputed and undisputed expenses. The exhibit listed the following undisputed expenses:

| | |
|---|---|
| Materials | $ 50,226.26 |
| Equipment Rental [to third parties—not equipment furnished by Briske] | 45,423.79 |
| Wages | 41,066.74 |
| Fringe Benefits | 614.56 |
| Engineer & Lab Work | 154.50 |
| Plans and Bids | 410.00 |
| Insurance | 1,359.00 |
| Bonding | 2,781.00 |
| Alaska Business License | 1,140.99 |
| Travel | 2,542.59 |
| Total Undisputed Expenses | $145,719.43 |

By relying exclusively on the undisputed column, the court did not allow *any* amount for the disputed expenses.[10] The court's disallowance of these expenses is questionable since the opposing party recognized the validity of these expenses but differed only as to the amount chargeable.[11] For example, in plaintiff's exhibit # 2, Stone listed his recollection of the amount allocated in the original bid estimates for equipment ownership costs. Briske contested these figures by referring to "blue book" estimates. Although there was a discrepancy between the figures submitted, there appears to be no dispute concerning the propriety of the charge in some amount.

The subcontract figure also was not included in the court's calculation. This fig-

8. Since the trial court determined that a contract existed between the parties, it must distribute the profit according to the terms of the contract. Contractual and quasi-contractual relief are mutually exclusive remedies. A quasi-contractual obligation is one that is created by the law for reasons of justice, without any expression of assent by the parties. A contractual obligation is created by expressions of assent. 1 Corbin, Contracts § 19 at 46 (1963) ; Nordin Construction Co. v. City of Nome, 489 P.2d 455, 464 n. 9 (Alaska 1971).

Thus, in order to divide the profits on a quasi-contractual basis, the trial court first had to find that there was no proof of an actual agreement between the parties or a failure of proof of certain of the terms which would permit the imposition of a quasi-contractual obligation. The court, however, did not make any such findings in the record. Furthermore, even if a quasi-contractual obligation was imposed by law, the measure of damages was not the profit of the enterprise but the amount of unjust enrichment which B. B. & S. Construction Co. had by virtue of the activity of the plaintiff. 1 Corbin, Contracts § 19 at 47–50 (1963). 1 Williston, Contracts § 3–3A at 8–13 (3d ed. 1957).

9. AS 32.05.130(1) provides:
"Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied ; and must contribute towards the losses, whether of capital or otherwise, sustained by the partnership according to his share in the profits."

In the amended findings this issue was not discussed. However, the only testimony on division was 50/50. Briske denied any contract. Thus, if a contract existed, the record would support only a 50/50 division.

10. The disputed expenses are as follows:
| | |
|---|---|
| Freight | $ 9,631.56 |
| Subcontractors | 71,958.80 |
| Parts and Supplies | 11,562.86 |
| Gas and Oil | 6,602.63 |
| Repairs and Maintenance | 12,262.51 |
| Payroll Taxes | 3,250.71 |
| Officer Salaries | 13,573.48 |
| Depreciation | 14,739.47 |
| Total Disputed Expenses | $ 143,582.02 |

11. Even the court in its findings of fact no. 8 acknowledged that some of the equipment used was provided by Briske. Thus one would expect a reasonable charge for an equivalent rental rate to be given to the owner of the equipment.

ure was derived from plaintiff's exhibit # 9 which listed expenses for subcontractors. As pointed out by Briske, Stone did not challenge the validity of the various subcontracts issued. The only dispute concerned the amount attributable to S. S. Construction Company (Stone's company).[12] In this appeal, Stone has not offered any reason for not including this expense in determining overall profit.

Similarly, with respect to some of the remaining items, Stone does not contest their validity. Stone's proposed findings of fact included the following items:

| | |
|---|---|
| Freight | $ 9,631.56 |
| Parts and Supplies | 11,562.86 |
| Gas and Oil | 6,602.63 |
| Repair and Maintenance | 12,262.51 |

As pointed out by Stone's expert witness, these types of expenses are properly chargeable in determining profits and losses. Yet the court did not allocate a minimum amount. The court also did not mention any amounts attributable to payroll taxes.

With respect to Briske's contention that the trial court should have included an amount for a bond premium in addition to the actual cost of the bond, the court made no findings. In light of the fact that both sides presented conflicting evidence on this point, the court may have concluded that Briske did not demonstrate, with the requisite specificity, his right to a bond premium. However, since the court's findings of fact are silent on this point, we have no way of determining the validity of Briske's claim.

Because the trial court has not made any specific findings with respect to the aforementioned items, we cannot make an informed review of the trial court's decision.

 It is apparent that the trial court erred in disallowing certain items which were clearly proven by appellant and as to which no contrary evidence was produced by appellee.

Therefore, we reverse and remand this case for a new determination by the trial court of allowable expenses. Once the allowable expenses have been subtracted, the remaining profit must be divided on a 50/50 basis between the two parties.

Reversed and remanded.

FITZGERALD, J., not participating.

12. As mentioned previously, Briske listed a figure of $71,958.80 while Stone believed the figure to be $47,213.71. Briske contends on appeal that at a minimum the trial court should have accepted Stone's figures.