L. E. SPITZER CO., INC., Appellant,

v.

Sean BARRON d/b/a Barron
Construction Co., Appellee.

No. 3340.

Supreme Court of Alaska.

June 23, 1978.

James D. Rhodes and Roger H. Beaty of Cole, Hartig, Rhodes, Norman & Mahoney, Anchorage, for appellant.

Walter H. Garretson and Jacob H. Allmaras, of Garretson & Jarvi, Anchorage, for appellee.

Before RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices, and DIMOND, Justice Pro Tem.

## OPINION

DIMOND, Justice Pro Tem.

L. E. Spitzer Co., Inc. appeals from a jury verdict entered against it for breach of an oral agreement with Sean Barron, d/b/a Barron Construction Co.

On May 12, 1975, Sean Barron and Lew Spitzer, president of L. E. Spitzer Co., Inc., met in Spokane, Washington to discuss the possibility of working together on a construction project at Fort Richardson, Alaska. They decided that Barron should go to Alaska to prepare a cost estimate for the project, which Barron did. Barron maintained that subsequently the parties agreed to submit a bid together and entered into a joint venture agreement.

Spitzer's bid was the low bid for the construction project, and Spitzer was awarded the contract. Spitzer then came to Alaska and informed Barron that they had no agreement. Following a heated debate, Spitzer agreed to pay Barron $10,000 for his release and to terminate their relationship.

The parties did not see each other again for about four weeks when Spitzer came to Barron's apartment. Because of problems on the project, Spitzer wanted Barron's help. The next day, July 20, 1975, Spitzer presented Barron with a joint venture agreement written in long hand.[1] It was agreed that the agreement should be taken to an attorney to be put in proper legal form and signed by the parties. Barron, however, testified that the handwritten document contained the terms of an oral agreement and was binding as of July 20, 1975. Spitzer, on the other hand, maintained that he did not intend to be bound unless such oral agreement was reduced to writing and signed by both parties.

The following day, Barron began to supervise the work. He continued to do so until August 15, 1975, when he went to Spitzer's attorney's office to pick up the written agreement. The terms of the writ-

---

1. The terms of the agreement were:

Number 1: All job-site and provable overhead expenses were to be considered job expenses and shared equally.

Number 2: All equipment acquired for the performance of the contract was to be considered a job expense and paid for and owned equally.

Number 3: All losses resulting from water damage, liquidated damages, and provisions of the warranty were considered job expenses and shared equally.

Number 4: Barron Construction Company would make a working capital contribution in the amount of $30,000.

Number 5: The agreement of June 25, 1975, would be null and void, and the $5000.00 payment previously made to Sean Barron would be returned to L. E. Spitzer upon settlement of the contract.

Number 6: Except as above, all profits realized from the completion of the contract were to be shared equally and distributed as follows: On or before 1 January, 1976, an accounting would be made and profits determined. In the event that the job was not yet finished, the first $100,000 profit was to be left intact for working capital. Any remaining profit would be used to repay working capital contributions in the proportion that they had been made. After repayment of working capital and remaining profit—any remaining profit would be considered excess and divided equally. Barron was to receive a draw of $500.00 per week, which would be credited against his share of the profits. The agreement included an additional 18 units, bringing the total number of units to 48. The following day the parties also agreed that the profits would be distributed proportionately if Barron died before the completion of the project. Approximately two weeks later, the parties met and reaffirmed the terms.

ten agreement materially differed from the terms of their alleged oral contract.[2] Barron returned to the construction site and told the employees that he was shutting the job down. Within an hour, Spitzer called Barron to find out what was going on. Barron told Spitzer that the written agreement, prepared by Spitzer's attorney, was not what they had agreed upon. However, according to Barron, Spitzer denied that, stating the written agreement embodied the terms of their oral agreement, and they had very little more to talk about.

Barron left the construction site intentionally leaving a building exposed to the weather. The building was not damaged. The project was subsequently completed by Spitzer at a substantial profit. Barron commenced this action against Spitzer for breach of the oral contract of July 20, 1975. The jury returned a verdict for Barron and awarded damages of $192,024.79.

Spitzer contends that the trial court improperly denied his motions for directed verdict and judgment notwithstanding the verdict for either of two reasons. First, Spitzer argues that the evidence was insufficient to show that an oral contract was formed. Alternatively, Spitzer argues that even if there was sufficient evidence to show a contract was formed, there was insufficient evidence to show that Spitzer repudiated the contract.

■ The standard of review regarding denial of motions for directed verdict and judgment notwithstanding the verdict is as follows:

It is well established that the proper role of this court, on review of motions for directed verdict or for judgment notwith-standing the verdict, is not to weigh conflicting evidence or judge of the credibility of the witness, but rather is to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable men could not differ in their judgment.[3]

In reviewing Spitzer's contentions on these issues, we must therefore view the evidence in the light most favorable to Barron.

## THE ORAL CONTRACT

Barron presented the following evidence to establish the existence of an oral contract:

1. Barron testified that the parties entered into an oral agreement on July 20, 1975. He testified that the terms were those stated in footnote 1 of this opinion. He stated his belief that the parties intended to be bound as of that date.

2. Both parties may be said to have acted in accordance with the agreement. Barron ran the job from July 20 to August 15, 1975. He received a weekly draw of $500 from Spitzer. He transferred $30,000 from his Colorado account to his Alaska account to contribute for capital. Spitzer set up a job checking account for Barron so that Barron could pay for on-the-job expenses. Spitzer and Barron negotiated together with the federal government for a price on the 18 additional buildings.

3. Other witnesses indicated that the parties had some type of agreement. Tom Clowers, the job's former superintendent and a carpenter, testified that Spitzer told him that "Sean [Barron] had become a partner, has bought it—has become a partner in the job." David Shaw, a laborer on the job,

---

**2.** For example, under the proposed written agreement, Barron would not receive any profits if he became incapacitated, while the oral contract provided for a proportional split. The proposed agreement stated that liquidated and water damages would be charged to Barron's profits; the parties shared their expenses under the oral contract. The proposed agreement charged Barron with the costs for excess man hours; the oral contract did not. The proposed agreement added other terms which the oral contract did not contain. Even Spitzer's attorney agreed that some of the provisions of the proposed agreement were unfair. Furthermore, Barron's profit under the oral contract was estimated to be $275,000. Under the proposed agreement, he would have profited at most, approximately $43,000.

**3.** *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 92 (Alaska 1974). *See also, Whittier v. Whittier Fuel & Marine Corp.*, 577 P.2d 216 (Alaska 1978); *Teller v. Anchorage Asphalt Paving Co., Inc.*, 545 P.2d 177, 180 (Alaska 1976).

stated that "I realized that him and Mr. Spitzer had—was in the job together." Mr. Spitzer told Richard Rierson, a worker on the job, that Spitzer and Barron had an agreement.

The applicable rule in Alaska concerning the existence of an oral contract is:

> Where the existence of an oral contract and the terms thereof are the points in issue and the evidence is conflicting it is for the trier of the facts to determine whether the contract did in fact exist, and if so, the terms thereof.[4]

█ Much of Barron's evidence relating to the existence of the oral contract was contradicted by evidence presented by Spitzer. Nevertheless, we conclude that, viewing the evidence and reasonable inferences therefrom in the light most favorable to Barron, there is sufficient evidence in the record to indicate that reasonable men might differ as to the question of the existence of the oral contract.

*B.B.&S. Construction Co. v. Stone*, 535 P.2d 271 (Alaska 1975) supports our conclusion. *B.B.&S. Construction Co.* involved a factual setting similar to the present case. Briske and Stone allegedly entered into an oral agreement. Briske supplied his company, the bonding capacity and the financial backing while Stone contributed his experience. The terms of the oral agreement were substantially similar to the terms of the oral agreement in the present case.[5] As in the present case, the parties acted in accordance with the agreement. The trial court found that an oral agreement existed after hearing conflicting testimony concerning the relationship of the two parties and the amount attributable to expenses. This court found no such clear error as would require a reversal of the trial court's determination that an oral contract existed between the parties.

Similarly, here we find that the question was properly submitted to the jury, and that there was sufficient evidence to support the jury's determination that the parties formed an oral contract. Thus, the trial court did not err in denying Spitzer's motions for a directed verdict or judgment notwithstanding the verdict as to the issue of the existence of an oral contract.

## THE REPUDIATION

Spitzer also contends that there was insufficient evidence to show that he repudiated the oral contract first.

On August 15, 1975, Barron went to Spitzer's attorney's office to pick up what Barron thought would be a written form of their oral contract. He discovered, however, that the terms of the proposed written agreement substantially differed from the terms of their oral agreement.[6] Barron was angry because he thought Spitzer was changing their oral agreement as he believed Spitzer had done before. Barron then returned to the construction site and shut the job down. Within an hour, Spitzer called Barron telling him that the written document embodied their agreement.

Spitzer argues that Barron repudiated the oral contract first by shutting down the job. Barron, on the other hand, asserts that he could suspend performance until he received adequate assurance that Spitzer intended to honor the oral contract.

Restatement, Contracts 2d § 275 (Tent. Draft No. 9, 1974) states:

> (1) Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would of itself give the obligee a claim for damages for total breach under § 268, the obligee may demand adequate assurance of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed

---

**4.** *Jackson v. White*, 556 P.2d 530, 532 (Alaska 1976); *B.B.&S. Construction Co., Inc. v. Stone*, 535 P.2d 271, 273 (Alaska 1975); *Nordin v. Zimmer*, 373 P.2d 738, 741–42 (Alaska 1962).

**5.** The profits would be split evenly. A rental rate for Briske's equipment was credited to job

expenses. Briske was to be credited with the actual cost of the bond which did not include the premium. Other expenses were predetermined. 535 P.2d at 272.

**6.** Spitzer admitted that the proposed written agreement altered many of the agreed terms.

exchange until he receives such assurance.

■ On this record Spitzer's alteration of material terms of the oral contract indicated his unwillingness to perform according to the terms of the oral contract. Thus, Barron had reasonable grounds for insecurity and could suspend performance until he received adequate assurances from Spitzer.[7]

Within an hour of his returning to the construction site and suspending performance, Barron received a call from Spitzer. Barron recalled the conversation as follows:

We [Spitzer and Barron] had a—a very explosive discussion, Mr. Spitzer wanting to know what was going on. He was in Spokane. I told him that I had gone down and picked up the agreement, and of course it was not the agreement at all. And Mr. Spitzer denied that. He said, that is the agreement—that's the agreement that we reached, and how can you say such a thing. And at—at that point we had very little more to talk about.

■ A reasonable inference from Spitzer's statements is that he denied the existence of the oral contract and indicated that the proposed written agreement contained the terms of their agreement, not the oral agreement. The applicable rule is:

If a promisor refuses to perform because he denies that there is any contract, or on the ground that the contract is invalid or otherwise without binding force or effect, there is a repudiation which, if accepted, constitutes an anticipatory breach of the contract.[8]

We conclude that, viewing the evidence in the light most favorable to Barron, there is sufficient evidence that Spitzer's denial of the oral agreement constitutes an anticipatory repudiation. Therefore, the matter was properly submitted to the jury for determination, and the motion for directed verdict and judgment notwithstanding the verdict were properly denied.

## OTHER CONTENTIONS

■ The foregoing discussion largely disposes of Spitzer's claim that the trial court erred in denying Spitzer's motion for summary judgment.

A summary judgment may not be granted when there are genuine issues of material fact to be resolved.[9]

Clearly, there were material issues to be resolved. The first was whether the parties formed an oral contract. The second was whether Spitzer committed an anticipatory repudiation. Thus, the motion for summary judgment was properly denied.

Spitzer's next contention is that the trial court erred in refusing to admit evidence of Barron's temperament. Spitzer sought to introduce evidence that Barron had a falling out with his parents 15 years ago and that he has not contacted them since that time. Spitzer maintained that the evidence was relevant to show that Barron had a "closed mind, an unyielding attitude, and a temperament of the type that led to the blowup between these parties." The trial judge refused to admit the evidence because: (1) it was too remote in time, (2) it was not relevant, and (3) it was too prejudicial.

Alaska case law defines the test of relevancy:

7. *See also*, Restatement, Contracts 2d § 275 (Tent. Draft No. 9, 1974) Comment C: "Conduct by a party that indicates his doubt as to his willingness or ability to perform but that is not sufficiently positive to amount to a repudiation, may give reasonable grounds for such a belief"; *Nowicki v. United States*, 536 F.2d 1171 (1976); *Kunian v. Dev. Corp. of America*, 165 Conn. 300, 334 A.2d 427, 433 (1973); 8 Corbin on Contracts, § 1253 (1951): "A building contractor may be justified in stopping work when a progress payment is delayed, without being justified in abandoning the contract."

8. 17A C.J.S. Contracts § 472(2) at 662 (1963). *See also, Lumbermens Mutual Casualty Co. v. Koltz*, 251 F.2d 499 (5th Cir. 1958); *Scotten v. Metropolitan Life Ins. Co.*, 68 S.W.2d 60, 62, (Mo.App.1934) *rev'd.* on other grounds, 336 Mo. 724, 81 S.W.2d 313 (1935).

9. *Alaska Airlines v. Sweat*, 568 P.2d 916, 930 n. 2 (Alaska 1977), *citing Howarth v. First National Bank of Anchorage*, 540 P.2d 486, 489–90 (Alaska 1975).

To be of sufficient relevance for admission, testimony, documents or other evidence must have some tendency in reason to establish a proposition material to the case.[10] (footnote omitted)

Furthermore,

The admissibility of evidence because of remoteness is largely within the discretion of the trial court, and in the absence of an abuse of that discretion, will not be overturned on appeal.[11]

■ We agree with the trial court's ruling that evidence of an incident which occurred 15 years ago is too remote. Even if it were not, we fail to see how the fact that a person has an "unyielding attitude" precludes him from forming a contract. Obviously, there was no abuse of discretion by the trial court requiring reversal.

■ Finally, Spitzer maintains that the trial court committed reversible error by refusing to admit a proposed agreement drafted by Barron's attorney without the cover letter which accompanied the proposed agreement. Spitzer, however, only gives this point cursory treatment in his brief without the citation of any authority. Furthermore, he failed to include the cover letter in the record on appeal.

[If a] point is not given more than cursory statement in the argument portion of the brief, such point will not be considered by the Supreme Court. Failure to argue a point constitutes an abandonment.[12]

Therefore, we decline to consider the point. Appellate Rule 11(b)(1)[g].[13]

The judgment is AFFIRMED.

BOOCHEVER, J., not participating.

**10.** *Hutchings v. State*, 518 P.2d 767, 769 (Alaska 1974). *See also, Poulin v. Zartman*, 542 P.2d 251, 260 (Alaska 1975).

**11.** *Courtney v. Courtney*, 542 P.2d 164, 167 (Alaska 1975). *See also, Lewis v. State*, 469 P.2d 689, 695 (Alaska 1970).

**12.** *Lewis v. State*, 469 P.2d 689, 691–92 n. 2 (Alaska 1970). *See also, Kristich v. State*, 550 P.2d 796, 804 (Alaska 1976); *Wernberg v. Matanuska Electric Association*, 494 P.2d 790, 794 (Alaska 1972).

**13.** Appellate Rule 11(b)(1)[g] provides:

The argument may be preceded by a summary. The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on, and it shall be preceded by a heading indicating the subject matter.